Argued February 28, decided March 21, 1911.

## BALDWIN LAND CO. v. COLUMBIA RY. CO.

[114 Pac. 469.]

Carriers—Interstate Shipments.

1. Plaintiff, desiring to ship sheep from S., in Oregon, to R., in Wyoming, inquired of the local agent at S. the amount of the through rate to R., but, being dissatisfied, obtained a quotation showing the charges from S. to B. in Oregon and from B. to R. After the sheep were loaded, the agent notified plaintiff that it could not carry them under the last quoted rate, but that plaintiff must pay the rate originally quoted, which was, in fact, the regular tariff rate, and the sheep were transported in the same car from S. to R. without being in any manner transferred at B. *Held*, that it was an interstate shipment.

Carriers—Charges—Tariff of Rates.

2. If a rate quoted is less than the schedule rate approved by the Interstate Commerce Commission and published, the shipper is liable for the full rate, whether he actually knows that the rate quoted is less than the schedule rate or not.

Carriers—Charges—Excess Charges.

3. Where a carrier in good faith quoted on an interstate shipment of sheep a lower rate than the tariff rate, and then demanded the schedule rate before shipment commenced, which was paid, it was not liable to the shipper for the difference between the rate quoted and the tariff rate.

Carriers—Charges—Action for Excess Charges.

4. Where, after a carrier quoted a rate on an interstate shipment, and the animals to be transported were loaded in cars, the carrier quoted a higher rate, which the shipper paid under protest, in an action for excess charges defendant could not show under the general issue that the rate first quoted was less than the established rate and therefore illegal.

Pleading—Defects and Objections.

5. Defendant by going to trial on issues framed by his denials, did not waive the error in striking out an answer.

From Multnomah:   John B. Cleland, Judge.

Statement by Mr. Justice McBride.

This is an action by the Baldwin Sheep & Land Company against the Columbia Southern Railway Company,

a corporation, and the Oregon Railway & Navigation Company, to recover damages in the sum of $446.74 and interest, as an overcharge caused by the alleged misquotation of a freight rate by one of defendants' agents on a shipment of sheep from Shaniko, Oregon, to Rawlins, Wyoming, in June, 1905. Plaintiff, desiring to ship 36 car loads of sheep, inquired of the agent of the Columbia Southern Railroad Company at Shaniko, Oregon, the amount of the through rate from that point to Rawlins. After securing the quotation, it became dissatisfied and took the matter up with R. B. Miller, general freight agent of the Oregon Railroad & Navigation Company, at Portland, Oregon, and asked what the rate would be on the sheep from Biggs, Oregon, to Rawlins, Wyoming; and also inquired of the agent at Shaniko the rate on the sheep from that place to Biggs. Plaintiff then loaded the sheep on the train at Shaniko, but, before the train left that station, the agent notified plaintiff that it could not ship the sheep under the last quoted rate, but must pay the freight as originally quoted; that being the regular tariff rate. Plaintiff refused to do this, and the Columbia Southern agent told it that it would have to unload its stock, which it declined to do and finally paid the tariff rate, originally quoted, under protest. The rate charged and collected is as follows:

33 36-foot cars, Shaniko to
Rawlins, at ................$139.04   $4,588.32
3 34-foot cars, Shaniko to
Rawlins at .............. 135.47       406.41
Terminal charges at Raw-
lins ................................        31.61
                                  ————————
                                          $5,022.34

The rate quoted erroneously to plaintiff is as follows:

36-foot cars, Shaniko to
Biggs, at ......................$ 11.60
36-foot cars, Biggs to
Rawlins, at ................ 116.00
                           ————————
33 36-foot cars at..............$127.60   $4,210.80

| | | | |
|---|---|---|---|
| 34-foot cars, Shaniko to Biggs | 11.60 | | |
| 34-foot cars, Biggs to Rawlins | 110.00 | | |
| 3 34-foot cars at $121.60 | | 364.80 | $4,575.60 |
| Alleged overcharge | | | $ 446.74 |

Plaintiff did not ask for a copy of the tariff when these rates were quoted, nor inspect any of the rate sheets on file at Shaniko. It paid the through rate from Shaniko to Rawlins. The stock went through from Shaniko, the point of origin, to Rawlins, in the same car, and were not transferred at Biggs. The Columbia Southern Railroad Company in 1905 was a feeder of the Oregon Railroad & Navigation Company, but was operated under separate management, and was commonly known as the "Lytle Road." It intersected the Oregon Railroad & Navigation Company's line at Biggs, Oregon. The Oregon Railroad & Navigation Company's line extends from Biggs, Oregon, to Huntington, Oregon. The Oregon Short Line extends from Huntington to Granger, Wyoming, and the Union Pacific Railroad Company's line extends from Granger to Rawlins, Wyoming. At the time this shipment moved, the Columbia Southern Railroad Company and the Oregon Railroad & Navigation Company had through billing arrangements from point of origin to point of destination. All of the negotiations and arrangements in regard to the rate were made with a view of moving the stock from Shaniko to Rawlins, via Biggs. The stock were loaded at Shaniko by plaintiff, and it had nothing more to do with them until they arrived at Rawlins. The case was tried before the court without a jury. Judgment was rendered in favor of defendants, and plaintiff appeals.      REVERSED.

For appellant there was a brief and an oral argument by *Mr. Milton W. Smith.*

For respondent there was a brief over the names of *Mr. William W. Cotton, Mr. Arthur C. Spencer* and *Mr. W. A. Robbins,* with an oral argument by *Mr. Robbins.*

Mr. Justice McBride delivered the opinion of the court.

1. The shipment from Shaniko via Biggs to Rawlins was clearly an interstate shipment. There was no change of cars or interruption in the regular course of transportation when the stock reached Biggs, nor was any such change or interruption contemplated by the shipper. It was one continuous shipment from one state to another. *Hanley* v. *Kansas City Southern Ry. Co.,* 187 U. S. 617 (23 Sup. Ct. 214: 47 L. Ed. 333); *Davis* v. *Southern Ry. Co.,* 147 N. C. 68 (60 S. E. 722); *Shelby Ice & Fuel Co.* v. *Southern Ry. Co.,* 147 N. C. 66 (60 S. E. 721); *Louisville R. Co.* v. *Behlmer,* 175 U. S. 648 (20 Sup. Ct. 209: 44 L. Ed. 309).

2. The authorities cited by appellant are not in point in this case: *Gulf, C. & S. F. R. Co.* v. *Texas,* 204 U. S. 403 (27 Sup. Ct. 360: 51 L. Ed. 540), is a fair illustration. In that case grain was shipped from Hudson, South Dakota, to Texarkana, Texas. While in course of shipment it was sold to a party in Goldthwaite, Texas, and the shippers notified their agent at Texarkana to reship the grain from there to their purchaser at Goldthwaite, which was done without breaking bulk or unsealing the cars. The agent of the shipper, however, surrendered the original bill of lading and took a new bill of lading from Texarkana to Goldthwaite. It was held that the shipment from Texarkana to Goldthwaite was no part of an interstate shipment. But there the original destination of the freight had been reached. There had been no intent on the part of the shipper or of the railroad company, when the freight started on its journey, that

it should be carried beyond Texarkana, while in the case at bar the intent. of both shipper and freighter in the first instance was that the freight should be carried by one continuous shipment from one state to another. As was said in the case last cited, the case of a freight contract is not essentially different from the purchase of a railroad ticket. Suppose the local rate for a ticket from Portland to San Francisco were two cents per mile and the local rate from Portland to Ashland were three cents per mile. Could one who purchased a ticket to San Francisco claim that he should have the charges so equalized that he could have the benefit of the lesser or interstate rate for the whole distance. The distinction is obvious. It would encourage the grossest form of rebating if an interstate shipment could be cut into local subdivisions in the same state, thus avoiding the regulations of the Interstate Commerce Commission. If the rate quoted is less than the schedule rate approved by the Interstate Commerce Commission and published, the shipper is liable for the full rate, whether he actually knows that the rate quoted is less than the schedule rate or not. We quote from *Texas & Pacific Ry. Co.* v. *Mugg*, 202 U. S. 242 (26 Sup. Ct. 628 : 50 L. Ed. 1011) :

"One who has obtained from a common carrier transportation of goods from one state to another at a rate specified in the bill of lading less than the published schedule rates filed with and approved by the Interstate Commerce Commission, and in force at the time, whether or not he knew that the rate obtained was less than the schedule rate, is not entitled to recover the goods, or damages for their detention, upon the tender of payment of the amount of charges named in the bill of lading, or of any sum less than the schedule charges."

In view of this decision it is needless to consider the decisions of the various state courts or the inferior courts upon the same subject.

Sig. 10

3. The most serious question that presents itself is whether the question last adverted to is raised in this case. The defendants by further and separate answers set up that at the date of the shipment there was in existence a joint tariff, which had been theretofore promulgated by the defendant companies, prescribing and fixing the minimum rates on cars loaded with sheep from all stations of the Columbia Southern Railway to the Missouri River common points, which rate was $181 per car, and that this rate applied to the shipment described in plaintiff's complaint; that at the time the shipment was made the same had been published and filed with the Interstate Commerce Commission, as required by law, and was also published and on file at defendant's station at Biggs, and Huntington, and at all intermediate stations; that at the same time there was a joint tariff in force and effect which was promulgated and entered into in connection with the Oregon Short Line Railroad Company and the Union Pacific Railroad Company, making a rate of $116 per car from Biggs, Oregon, to Rawlins, Wyoming, and that such tariff at the time of the transaction was set forth in the complaint published and on file with the Interstate Commerce Commission, as required by law, and published and on file with the different stations of the Oregon Railroad & Navigation Company, including the station at Biggs. Defendants alleged that they had in good faith quoted the lower rate claimed by plaintiff, and that, when the shipment was made, they demanded the tariff rate. A demurrer was sustained by the court to this answer of which but the mere skeleton is here given, and defendants, without filing any further or amended answer, went to trial upon issues framed by their denials. In our view the answers filed stated a complete defense, and the court erred in sustaining the demurrer. But this error cannot be corrected here, and the question before us is whether in the muti-

lated state of the pleadings defendants could show, under the general issue, that the rate first quoted was less than the established rate, and therefore illegal, and that the rate charged was the regular tariff rate. The general rule is that the illegality of a contract cannot be proved unless it is pleaded, and, the pleadings in this case having been pruned of this defense, defendants had no right to offer testimony in regard to it and such as was offered was excluded by the court.

4. One of the exceptions to the above rule is that, where it affirmatively appears from competent testimony that the contract sued upon is illegal, the court will refuse the plaintiff relief, irrespective of the pleadings, as, for instance, if plaintiff should sue *in assumpsit,* and it should appear from his testimony that the contract was based upon a promise to pay money won at gaming. The rule in this State is that if the complaint shows a contract valid on its face, and the defendant, in his answer, fails to point out the transaction or vice which renders it illegal, he will not be allowed to introduce testimony to show such illegality. This is so well established in *Buchtel* v. *Evans,* 21 Or. 309 (28 Pac. 67), that it is unnecessary to cite further authorities.

5. It is true that, if plaintiff had prevailed in this case, this court would have been obliged to reverse the judgment on account of the error of the court in striking out defendants' answer, which error they did not waive by going to trial upon their denials, and it may be true that the court may be compelled to reverse any future judgment that plaintiff may recover until this error is corrected by the lower court and defendants are permitted to offer proof, if they have any, of the matters pleaded in their second defense. But in the present state of the pleadings and proof the findings of the circuit court cannot be sustained.

Judgment reversed and new trial ordered.

REVERSED.