Argued and submitted May 2, decided May 23, 1911.

## OREGON R. & N. CO. *v.* COOLIDGE.

[116 Pac. 93.]

EVIDENCE—DOCUMENTARY EVIDENCE—COPIES—PRELIMINARY PROOF.

1. Where, after reciting his custody of the schedules and tariffs of rates, the secretary of the Interstate Commerce Commission stated that copies had been compared by him with the originals in his custody, and that the same were correct transcripts, there was a substantial compliance with Section 771, L. O. L., providing that, whenever a copy of a writing is to be certified to be used as evidence, the certificate shall state that the copy has been compared by the certifying officer with the original, and that it is a correct transcript thereof.

EVIDENCE—OPINION EVIDENCE—CONSTRUCTION OF WRITINGS.

2. Under Section 136, L. O. L., making it the duty of the court to construe the legal effect of documents offered in evidence, it was not error in an action by a railroad to recover freight charges, to refuse to allow a rate expert to construe certified copies of extracts from rate sheets furnished by the secretary of the Interstate Commerce Commission and to declare to the jury therefrom the amount of the legal rate.

CARRIERS—CARRIAGE OF FREIGHT—SUIT FOR CHARGES—SUFFICIENCY OF EVIDENCE.

3. In an action by a carrier for freight charges, evidence *held* insufficient to prove that the rate claimed in the complaint was the legal rate for which defendant was liable.

CARRIERS—CARRIAGE OF FREIGHT—CHARGES.

4. In an action by a railroad to recover freight charges, where the legal rate is properly proven, its reasonableness cannot be questioned.

COMMERCE—FREIGHT RATES—REASONABLENESS—DETERMINATION—JURISDICTION OF COURTS.

5. A transportation company may at the outset establish its rates without previous application to the Interstate Commerce Commission and the question as to the reasonableness of such rate can be heard in the first instance only before such Commission.

From Union:  JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by the Oregon Railroad and Navigation Company against O. F. Coolidge.

The plaintiff, a railway corporation organized under the laws of Oregon, operating as a common carrier a railway extending from Portland to Huntington in this State, claims to have entered into an arrangement with the Union Pacific, the Oregon Short Line, and the Denver & Rio Grande Railroad Companies whereby they promulgated a joint tariff prescribing a rate of 60 cents per hundred pounds on shipments of cement in car load lots transported over their several lines of railroad from Portland, Colorado, to La Grande, Oregon, which said tariff was thereafter duly published and filed with the Interstate Commerce Commission and was at the times mentioned in the complaint the lawful rate for the transportation of that kind of property between said points over said lines of railroad. As the delivering carrier authorized under that arrangement to collect in its own name from a consignee the entire through freight charges on freight moving between those two points, the plaintiff asserts in substance that about April 25, 1907, the defendant purchased at Portland, Colorado, 500 sacks of cement, loaded the same on a car, and delivered the car so loaded to the Denver & Rio Grande Railroad Company at Portland, Colorado, with instructions to transport the same over said lines of railroad and deliver it to defendant as consignee at La Grande, Oregon, and that he agreed to pay for the same the lawful rate for that carriage of that kind of property. It is also stated in the complaint that having received the shipment at Huntington, Oregon, its eastern terminus, the plaintiff paid the other lines of railroad the full amount of their charges for transporting the property to that point and thereafter carried it to La Grande, where the shipment was

delivered to and accepted by the defendant as consignee. The plaintiff avers that the total freight charge on the shipment according to the legal tariff was the sum of $291.25, of which the defendant paid the plaintiff $166.25, leaving a balance of $125 which the defendant refused to pay and for which the plaintiff demands judgment. There are two other counts in the complaint for two similar shipments on like alleged terms. The answer traverses all the allegations of the complaint aside from the corporate existence and business of the plaintiff, except as otherwise stated in the answer. The defendant affirmatively states that he purchased 500 sacks of cement at Portland, Colorado, for sale at La Grande, and the vendor then and there caused the said cement to be delivered to defendant at La Grande; that plaintiff delivered the cement to the defendant at La Grande, and demanded and received from defendant as full and reasonable compensation for the transportation in question the sum of $166.25, which was the reasonable and only amount fixed or lawfully chargeable or collectible by plaintiff as freight on such a shipment, being a rate of 35 cents per hundred pounds. Substantially the same defense is made to the other two counts. The reply materially controverts the answer especially as to the rate properly chargeable. At the close of the testimony for the plaintiff the court entered a judgment for nonsuit, from which the plaintiff appeals.    AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. William W. Cotton, Messrs. Cochran & Cochran* and *Mr. W. A. Robbins.*

For respondent there was a brief and an oral argument by *Mr. Francis S. Ivanhoe.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The plaintiff declares upon an original agreement of the defendant to pay the freight at the legal rate estab-

lished in pursuance of the interstate commerce law, alleging that rate to be 60 cents per hundred pounds. Both the agreement and the alleged rate having been denied, it was incumbent upon the plaintiff to prove them. It may be remarked in passing that there is no evidence in the record showing that any contractual relations existed directly between the plaintiff and any of the carriers mentioned in the pleadings. At best it only shows that a consignor at Portland, Colorado, loaded the property on a car, and intrusted it to the Denver & Rio Grande Railroad Company, and directed its shipment to the defendant at La Grande. The most that the testimony shows in that respect is that the defendant found his property in the possession of the plaintiff at La Grande under its claim of $166.25 for freight, which he paid, and received his property.

2. The principal question, however, in this case hangs upon whether or not the plaintiff offered sufficient proof that the legal rate was 60 cents per hundred pounds, as alleged in the complaint. The only testimony offered on that question consisted of extracts from freight tariffs jointly filed with the Interstate Commerce Commission by the plaintiff and other railway companies participating in the shipment, as mentioned in the complaint. Objection is made by the defendant that these extracts were not properly certified, but this was practically abandoned at the argument. In addition to reciting his custody of the schedules and tariffs of rates, the certifying officer, the secretary of the Interstate Commerce Commission, states that the copies had been compared by him with the originals in his custody and that the same are correct transcripts of the parts thereof particularly specified in said documents. This is a substantial compliance with our statute on that subject. Section 771, L. O. L. The secretary further states that these extracts show "the combination through rates based on Portland,

Oregon, and rules and regulations governing the same applicable to a shipment of cement moving between April 15, 1907, and August 15, 1907, from Portland, Colorado, to La Grande, Oregon," and further states that there are "no through joint rates on file with the said commission from and to the said points of origin and destination applicable to said shipment between said dates," meaning between Portland, Colorado, and La Grande, Oregon. It is the duty of a certifying officer only to state what his record shows in terms quoted in the transcript. It is not for him to impart legal effect to the excerpts quoted. His statement that the extracts show the combination through rates and rules and regulations governing the same and that they are applicable to a shipment, are conclusions of law and are not binding upon the court. It is for the court to construe the legal effect of documents offered in evidence. Section 136, L. O. L. Within the meaning of this section it was not error when the circuit court refused to allow a rate expert, produced by plaintiff as a witness to construe the certified copies of the extracts from the rate sheets above mentioned and to declare to the jury therefrom the amount of the legal rate.

3. The first extract is from supplement No. 17 to the transcontinental freight bureau, west-bound tariff No. 4C, effective June 24, 1905. It states that "the following special commodity rates will apply only from and to points designated, except that rates applying from Missouri River common points will apply as maxima from Colorado terminals and Colorado common points." It gives the rate over the lines of the companies mentioned in the complaint on cement from Portland, Colorado, to Portland, Oregon, at 35 cents per hundred pounds. It also appears from a further extract from the freight tariff of the plaintiff filed with the Interstate Commerce Commission that the special commodity rate on cement

from Portland, Oregon, to La Grande was 25 cents per hundred pounds. A still further extract certified by the secretary from the transcontinental freight bureau circular No. 9-C, filed October 6, 1906, that "rates applicable, to or from intermediate Pacific Coast points as published in current east-bound and west-bound tariffs of the transcontinental freight bureau or subsequent issues thereof will apply to or from stations named herein on the lines of the O. R. & N. Co. in Oregon, Washington, and Idaho * * west bound; where lower through rate can be made by use of the terminal rate to Portland plus the local rate from Portland to destination, such lower through rate will govern." It also appears that Portland, Oregon, takes a terminal rate and La Grande takes rates applicable to or from intermediate points. Do these extracts thus certified prove the plaintiff's allegation that 60 cents was the legal rate for 100 pounds on a shipment of the kind in question from Portland, Colorado, to La Grande, Oregon.

The plaintiff contends that it is not only entitled to, but required to, charge the terminal rate from Colorado to Portland, Oregon, 35 cents, which the defendant has already paid, but also an additional 25 cents, being the local rate from Portland, Oregon, back to La Grande. Under the paragraph relating to west-bound freight above quoted, this combination of the terminal rate of 35 cents plus the local rate back to the ultimate destination, La Grande, can be used only when that sum, amounting to 60 cents, is lower than the through rate, being a rate direct from Portland, Colorado, to La Grande. No evidence whatever was offered of any such through rate. Hence the court was without any standard of comparison whereby to determine whether the combination of the terminal and local rate would be less or greater than the through rate. The certificate of the secretary of the Interstate Commerce Commission,

indeed, states that there is no through joint rate on file
with the Commission between Portland, Colorado, and
La Grande, but this is not enough in our judgment to
authorize or require the plaintiff to charge for a haul
from Portland, Colorado, through La Grande to Portland,
Oregon, and back again to La Grande, when the only ser-
vice rendered was a direct haul from the point of ship-
ment to the point of delivery. If any evidence had been
given of a through rate the court could then have deter-
mined whether it was greater or less than the combina-
tion rate charged by the plaintiff. Section 2 of the act
of Congress of June 29, 1906, amendatory of the original
interstate commerce law (24 Stat. 380 [U. S. Comp. St.
1901, p. 3156]), provides that "if no joint rate over the
through route has been established, the several carriers
in such through route shall file, print, and keep open to
public inspection the separately established rates, fares,
and charges applying to the through transportation." 34
U. S. Stat, at Large, p. 586 (U. S. Comp. St. Supp. 1909,
p. 1153). The plaintiff failed in its proof in that it gave
no evidence either of a joint rate or of what would oper-
ate in its place, namely, the several rates charged by
each carrier applicable to a through shipment over the
several lines between the point of origin and the point of
delivery of the shipment the sum of which would be
equivalent to a through joint rate. In our judgment, the
testimony offered on this point was not sufficient to prove
the allegation that 60 cents per hundredweight was the
legal rate for which the defendant was liable, if at all.

4. It may be well conceded that if the legal rate had
been properly proven its reasonableness could not be
questioned in this action. *Baldwin Land Co.* v. *Columbia
Railway Co.*, 58 Or. 285 (114 Pac. 469).

5. It may also be conceded as established by the author-
ities that the transportation company has the right at the
outset to establish its rates without previous application

to the Interstate Commerce Commission and that the question as to the reasonableness of such rate can be heard, in the first instance at least, only before that Commission; but, presuming that the transportation companies concerned in the joint shipment have obeyed the law, the court below was authorized to conclude that in accepting the shipment and delivering the same to the defendant on payment of a rate of 35 cents per hundred it had lawfully fixed that as the rate from the point of origin to La Grande and having fixed it once and closed the transaction in question, it could not, so far as appears in the evidence in this case, afterwards fix another rate, and make it relate back to the closed incident as a basis upon which to demand an increase in the charges.

The judgment is affirmed.        AFFIRMED.