Argued May 1, affirmed May 23, 1916.

## DAHLSTROM v. HUDELSON.

(157 Pac. 798.)

Contracts—Construction—Province of Court and Jury.

1. Under Section 136, L. O. L., declaring that all questions of law are to be decided by the court, it is the duty of the trial court to interpret written memoranda of contracts.

[What is mutual account as question for the jury, see note in Ann. Cas. 1913D, 820.]

Logs and Logging—Contracts—Construction.

2. A written contract between plaintiff's intestate and the M. Lumber Company providing that the sale to it of timber, and author-izing the intestate to perform at his option a part of the work in getting out the timber, stipulated that the intestate should have the first and prior right to the timber and lumber sawed, until his claim had been paid. The M. Lumber Company sold to a second lumber company under a contract of the same date the timber which the M. Company agreed to manufacture. This contract stipulated that, if the M. Company failed, the second lumber company might take possession of its sawmill and manufacture the timber. The contract

for the purchase of the timber was also assigned as collateral. After cutting the timber and manufacturing part of it, the M. Company failed, and a receiver was appointed. Thereafter the second lumber company paid the receiver a sum of money to be paid to plaintiff's intestate. *Held,* that under the contract the second lumber company had the right to pay plaintiff's intestate for the timber, and, having made the payment to the receiver of the original purchaser, plaintiff might recover from him the amount paid.

From Union: JOHN W. KNOWLES, Judge.

In Banc.   Statement by MR. JUSTICE BEAN.

This is an action by O. P. Dahlstrom, as administrator of the estate of John A. Landberg, deceased, for money had and received.

This controversy arose out of the following facts: On December 2, 1912, John Landberg, the plaintiff's intestate, and three others entered into a contract with the Metzler-Hegsted Lumber Company to sell to it the timber growing on their respective tracts near North Powder, Oregon.   This agreement contained various provisions relating to the terms of payment, the time in which to complete the contract, and the right of the vendors at their option to perform a certain part of the work in getting out the timber.   It was stipulated that they should have "the first and prior right to the said timber and the lumber sawed out of the said timber, until their claims against the said lumber [company] for logs delivered and sawed as herein provided have been satisfied."

This company sold the timber to the Radford Lumber Company under a contract of the same date, in which the former agreed to manufacture the timber into lumber and deliver it at North Powder, Oregon. It was also stipulated therein that, if the Metzler-Hegsted Lumber Company failed to do this, the Radford Company had the right to take possession of its sawmill and manufacture the timber into lumber.   The

former also assigned the contract for the purchase of the timber to the latter, and recited that it was as collateral for $1,000 advanced. After cutting the timber from the Landberg lands and manufacturing a part of it into lumber, the balance being logs left cut upon the ground, the Metzler-Hegsted Lumber Company failed in business. In the meantime Landberg died, and the plaintiff was appointed as administrator of his estate.

As the evidence tended to show, the defendant, with a representative from each of the lumber companies, called upon the plaintiff and agreed with him that, if he would permit the logs to be sawed and the lumber to be delivered, the purchase price of the logs would be paid. Thereafter the Radford Company paid the money to the defendant, who received the same expressly for the purpose of paying plaintiff for the logs. Defendant having failed to so pay plaintiff, this action was instituted.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. John S. Hodgin.*

For respondent there was a brief over the names of *Messrs. Cochran & Eberhard,* with an oral argument by *Mr. Colon R. Eberhard.*

MR. JUSTICE BEAN delivered the opinion of the court.

1, 2. Exceptions were taken by defendant's counsel to the charge of the trial court, which involves a construction of the contracts under which the transactions took place. As we understand the record, this is the main error complained of, and the only one upon which we are required to pass. The gist of the charge to the jury was that the Radford Lumber Company had a right to pay the plaintiff for the stumpage and labor

performed under the contract with the Metzler-Hegsted Lumber Company, or for the logs.

It was the duty of the trial court to advise the jury as to the meaning of the written memoranda of the contracts involved in the case: Section 136, L. O. L.; *Chadwick* v. *Oregon-Washington R. & N. Co.*, 74 Or. 19, 20 (144 Pac. 1165); *Baker County* v. *Huntington*, 48 Or. 593, 599 (87 Pac. 1036, 89 Pac. 144); *Oregon Ry. & N. Co.* v. *Coolidge*, 59 Or. 5, 9 (116 Pac. 93); Branson's Instructions to Juries, § 7. The only question therefore is, Were the contracts properly interpreted to the jury? As before stated, the contract with the Radford Lumber Company provided that, if the other lumber company should fail to perform its contract, the former would have the right to step into its shoes and carry out the terms of the agreement. Evidently it was intended by the parties that upon such cessation of the Metzler-Hegsted Lumber Company the Radford Company should have the right to proceed with the activities itself or make arrangements with someone else so to do. It could not expect to obtain the lumber without the stumpage and expenses of logging being paid. It was therefore its right and duty to so adjust the entangled affairs of the Metzler-Hegsted Lumber Company as to permit Hudelson, acting for it, to proceed with the work of manufacturing the lumber, and recompense plaintiff for the logs from which the same was produced, in order that it might obtain a good title to the lumber as well as to faithfully perform the terms of the contract. The court therefore properly instructed the jury to this effect. This was substantially the claim plaintiff made by his evidence while the defendant asserts otherwise. The terms of the triple agreement were in dispute. From the testimony

the jury found in favor of the plaintiff. This settles the question of fact.

The record discloses no error, and the judgment of the lower court is affirmed.    Affirmed.

Mr. Justice Eakin, absent.