Argued April 9, reversed May 14, 1918.

## BLACK *v.* SOUTHERN PAC. CO.

(171 Pac. 878.)

**Evidence — Carriage of Freight — Excess Charges — Construction of Tariff Provisions—Statute.**

1. Under Section 136, L. O. L., specifying what questions are to be decided by the court, in an action to recover excess freight charges paid a railroad, it is the exclusive province of the court to construe tariff provisions involved, and it is error to permit rate experts to construe them.

**Carriers—Carriage of Freight—Excess Charge—Recovery.**

2. Neither the shipper of freight nor the carrier is bound by the rate actually paid; the shipments being controlled by whichever published rate is applicable, so that, if a shipper paid more than the lawful rate, he is entitled to recover the excess.

**Carriers — Carriage of Freight — Construction of Tariff Provisions—Statute.**

3. Under Section 715, L. O. L., as to the construction of a statute or instrument, if possible, tariff provisions of a freight carrier by rail should be construed so as to give effect to all the language employed in them.

**Carriers—Carriage of Freight—Rates—Construction of Tariff Provisions.**

4. Where tariff provisions of a railroad specified a rate of $1 per 100 pounds for fish, salted and pickled, including caviar, under "re-

frigeration," minimum carload rate 30,000 pounds per car, and a rate of 85 cents per 100 pounds for fish, salted and pickled, including caviar, minimum carload weight 40,000 pounds, for carrying pickled fish "under refrigeration," which could only be done in refrigerator-cars, the railroad was entitled to charge the shipper $1 per 100 pounds for transportation; an extra fee for refrigeration being charged.

[As to matters to be considered in determining reasonableness of freight rates, see note in Ann. Cas. 1916A, 8.]

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.

This action was brought to recover alleged excess freight charges paid to the Southern Pacific Company for transporting fifty-five carloads of pickled fish, over its lines and connections, from California to New York. The shipments were made on and between May 7, 1910, and June 25, 1912. The two following tariff provisions, having been published, posted, and filed with the Interstate Commerce Commission, were in effect from March 22, 1910, to August 19, 1912:

"Fish, salted and pickled, (including Caviar), under refrigeration, subject to storing in transit privileges, as published in tariffs of individual lines, lawfully on file with the Interstate Commerce Commission, rate $1.00 per 100 lbs., Min. C. L. Wt. 30,000 lbs. per car."

"Fish, salted and pickled, (including Caviar), Min. C. L. Wt. 40,000 lbs., subject to storing in transit privileges, as published in tariffs of individual lines, lawfully on file with the Interstate Commerce Commission, rate 85 cents per hundred pounds."

During all the times mentioned in this opinion the following provision, relating to refrigeration and approved by the Interstate Commerce Commission, was in force:

"Rates named in this tariff, do not include charges for icing and care of refrigeration of freight in transit when it is so forwarded. Refrigeration being a special service separate and distinct from transportation,

the charge made for refrigeration, is in addition to the transportation rates named herein.''

The carrier charged and the shipper paid the $1 rate on all the shipments. The weights of the respective shipments varied from 34,976 pounds to 55,400 pounds. The shipper ordered all the fish to be moved in Pacific Fruit Express Company cars ''under refrigeration'' and every shipment was ''actually moved in Pacific Fruit Express Company cars, and that the shipments were under refrigeration, for which service each car was charged $70.00 and which sum shippers paid in addition to freight charges.''

The complaint is framed upon the theory that all the shipments were covered by the 85 cent rate and that therefore the plaintiff was entitled to recover all sums paid in excess of that rate. The parties agreeing, the cause was heard and decided by the court without the aid of a jury. The findings of fact and conclusions of law were for the plaintiff and the defendant appealed from the consequent judgment.

REVERSED.

For appellant there was a brief over the names of *Mr. Alfred A. Hampson* and *Mr. Ben C. Dey,* with an oral argument by *Mr. Hampson.*

For respondent there was a brief over the name of *Messrs. Bernstein & Cohen,* with an oral argument by *Mr. Alex. Bernstein.*

HARRIS, J.—The main question for decision is whether the shipments were covered by the 85 cent rate or by the $1 rate. The contention of the plaintiff is clearly stated in his brief in the following language:

"The plaintiff herein maintains that at the time of these shipments when he presented for shipment a minimum of 40,000 lbs., he was entitled to an 85 cent rate and if he demanded refrigeration, he was entitled to have same forwarded under refrigeration by the payment of the additional sum of $70 per car. * * A fair interpretation of the tariff therefore as extant when the shipments were made, was that when the shipper presented 40,000 lbs. minimum weight of the article mentioned in the tariff, he could forward it for 85 cents, and if he desired refrigeration, he could order it under refrigeration, paying therefor the additional sum as published for such additional service. In this instance, it was $70 per car and that amount was paid for each car that the shipper used."

The defendant argues that the circumstance of whether or not the shipment is "under refrigeration" determines the rate to be charged.

It will be helpful if we first notice the conditions as they are found in practice. Among the cars used by carriers are the ordinary box-cars and refrigerator-cars. There are a number of points of difference between an ordinary box-car and a refrigerator-car of the same exterior measurements. A refrigerator-car has thick walls and is equipped with ice bunkers; it costs more, weighs more and at the same time has less cubical carrying capacity than an ordinary box-car. The words "under refrigeration" have a definite and well-understood meaning. A shipment "under refrigeration" means goods moved in a refrigerator-car supplied with ice; and when goods are ordered to be transported "under refrigeration" it means in the language of one of the witnesses: "that the shippers desire the goods to move in refrigerator-cars with ice in the tank." B. H. Trumbull, a witness for the plaintiff, testified that it is impossible "to move pickled fish under refrigeration in an ordinary box-

car'' and ''for this fish to move under refrigeration it is absolutely necessary that it move in a refrigerator-car.''  A refrigerator-car moving ''under refrigeration'' is iced when the car is loaded ''and then kept re-iced in transit about every two hundred miles apart,'' and since it ''cannot be allowed to lay around'' it is ''given preference in handling'' and its movement is expedited.

It must be remembered that the specified freight rates do not include charges for icing and care of refrigeration in transit.  The charge of $70 made and paid upon each car for refrigeration was in addition to whatever transportation rate was properly chargeable.  It must also be remembered that all the shipments in question were ordered by the shipper to be moved ''under refrigeration'' and therefore to comply with this order the carrier was necessarily obliged to move the goods in refrigerator-cars.

1, 2.  It is the exclusive province of the court to construe the tariff provisions involved in this controversy, and it was therefore error to permit rate experts to construe them: Section 136, L. O. L.; *Oregon R. & Nav. Co.* v. *Coolidge,* 59 Or. 5, 9 (116 Pac. 93). Neither the shipper nor the carrier is bound by the rate actually paid because the shipments are necessarily controlled and governed by whichever published rate is applicable to the shipments, and hence if the shipper paid more than the lawful rate he is entitled to recover the excess: *Texas & Pacific R. Co.* v. *Mugg,* 202 U. S. 242 (50 L. Ed. 1011, 26 Sup. Ct. Rep. 628).

3, 4.  Our statute, Section 715, L. O. L., declares that:

''In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare

what *is*, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

If possible, the tariff provisions should be so construed as to give effect to all the language employed in them: *Arment* v. *Yamhill County*, 28 Or. 474, 479 (43 Pac. 653); 2 Elliott on Contracts, § 1515. Both tariff provisions relate to "FISH, Salted and Pickled (including caviar)"; one provision contains the words "under refrigeration" while the other tariff provision does not contain these words. The provision which contains the words "under refrigeration" fixes 30,000 lbs. as the minimum carload weight with a rate of $1 per hundred pounds, while the other provision prescribes 40,000 lbs. as the minimum carload weight with a rate of 85 cents per hundred pounds. Finding as we do a difference between both the minimum weights and the rates and observing as we must that the words "under refrigeration" appear in the provision which fixes the higher rate for the lower minimum carload weight and that these words are omitted from the provision which names the lower rate for the greater minimum carload weight, we must conclude that the words "under refrigeration" were designedly inserted in one provision and deliberately omitted from the other. The relative position occupied by the words "under refrigeration" is also important. Both provisions speak of "FISH, Salted and Pickled (including caviar)"; but only one provision contains the qualification "under refrigeration" and that qualification appears immediately after the words "FISH, Salted and Pickled (including caviar)"; and hence the plain meaning of this tariff provision is that

"FISH, Salted and Pickled (including caviar)" when "under refrigeration" must be charged with the $1 rate. If the rate is to be determined by the minimum weight rather than by the circumstance as to whether the freight is under refrigeration the words "under refrigeration" are practically meaningless; and in this connection it is interesting to note that when B. H. Trumbull, a rate expert called by the plaintiff, was asked, "how do you explain the fact that the words 'under refrigeration' appear under the dollar provision, and not under the 85 cent provision?" he answered thus: "I don't know that I would explain that at all."

Both before and after the shipments in question a change was made in the wording of the tariff provisions relating to salted and pickled fish, and the plaintiff claims that these changes lend support to his contention. These two tariff provisions were originally proclaimed on December 6, 1909, when they appeared in the following form:

"FISH, Salted and Pickled (including caviar) IN REFRIGERATOR CARS, subject to storing in transit privileges as published in tariffs of individual lines lawfully on file with Interstate Commerce Commission, minimum weight 30,000 lbs.                              $1.00.

"FISH, Salted and Pickled (including caviar) IN ORDINARY BOX CARS, minimum carload weight 40,000 lbs., subject to storing in transit privileges as published in tariffs of individual lines lawfully on file with Interstate Commerce Commission.   85 cents."

The first change occurred on March 22, 1910, when the provisions were issued in the forms which have already been quoted and were effective when the shipments in question were made. The second change occurred on August 19, 1912, when the provisions were made to read thus:

"FISH, Salted and Pickled (including caviar) in barrels, UNDER REFRIGERATION, subject to storing in transit privileges as published in tariffs of individual lines lawfully on file with Interstate Commerce Commission, minimum weight 30,000 lbs.
$1.00.

"FISH, Salted and Pickled (including caviar) in barrels, NOT UNDER REFRIGERATION, minimum carload weight 40,000 lbs. subject to storing in transit privileges as published in tariffs of individual lines lawfully on file with Interstate Commerce Commission.
85 cents."

Aside from the words "in barrels" found in both provisions as published on August 19, 1912, the wording has remained practically unchanged in each provision, except in one particular. The provision prescribing the $1 rate was changed on March 22, 1910, by substituting the words "under refrigeration" for the words "in refrigerator-cars"; and no other alteration was made afterwards except to insert the words "in barrels." The first change in the 85-cent provision was made on March 22, 1910, by omitting the words "in ordinary box-cars"; and the second alteration was made on August 19, 1912, by inserting the words "in barrels, NOT UNDER REFRIGERATION."

An examination of the three several forms in which each of the two provisions has appeared will disclose that at all times pickled fish shipped "under refrigeration" moved at the $1 rate. Since salted and pickled fish cannot be moved "under refrigeration" unless shipped in refrigerator cars it necessarily follows that when a shipper ordered fish moved "under refrigeration" it was shipped in refrigerator-cars, and therefore at the $1 rate even under the form of the $1 provision as first published. While it is not necessary to inquire into the reason for the changes in the wording

it has been suggested that the first alteration was made in order to permit the carrier, if it wished, to move fish ''not under refrigeration'' in any available equipment.   Notwithstanding the very ingenious argument which learned counsel for plaintiff predicate upon the changes in the wording of the tariff provisions, we construe the provisions to mean that the specified commodity when shipped ''under refrigeration'' at all times moved at the $1 rate.   This is the construction given by the Interstate Commerce Commission.   Although writing about a controversy which probably arose under the tariff provisions as published on August 19, 1912, the commission said in *G. W. Hume Co.* v. *Southern Pacific Co.*, 33 I. C. C. 126, that the rate ''is $1 per hundred pounds when under refrigeration and 85 cents per hundred pounds when not under refrigeration.   Both rates have been in effect for a *number of years.*''

The judgment appealed from is reversed and the defendant is entitled to a judgment for its costs and disbursements.                               REVERSED.

McBRIDE, C. J., BURNETT and BENSON, JJ., concur.