DAVIS, Director General of Railroads, etc., v.
KRAUSS BROS. LUMBER CO.

District Court, E. D. Louisiana. April 27,
1928.

No. 17281.

I. Railroads ⊜⇒5½(4)—Through rate, exceeding sum of locals, held legal, under act turning over railroads to President and orders issued thereunder (Interstate Commerce Act, §§ 4, 6 [49 USCA §§ 4, 6]; Railroad Control Act, § 10 [Comp. St. § 3115¾j]).

Under Interstate Commerce Act, §§ 4 and 6 (49 USCA §§ 4, 6; Comp. St. §§ 8566, 8569), which, considered together, intend that, if carrier filed tariffs which contained through rate exceeding sum of locals, such rate would be prima facie unlawful, unless protected under one of its provisions, through rate exceeding sum of local rates *held* legal, under Railroad Control Act, § 10 (Comp. St. § 3115¾j), turning railroads over to President and empowering him to initiate tariffs by mere filing of same with Commission, and orders issued thereunder.

2. Commerce ⊜⇒89(2)—Shipper must attack reasonableness of rate before Interstate Commerce Commission, and not in courts.

Shipper must attack reasonableness of through rate, greater than sum of its intermediates, before Interstate Commerce Commission, and not in courts.

3. Carriers ⊜⇒26—Shipments from Iuka, Miss., to Memphis, Tenn., reconsigned to cities in Arkansas, were through shipments for rate purposes.

Shipments made from Iuka, Miss., to Memphis, Tenn., and reconsigned from Memphis to cities in Arkansas, must be regarded as through shipments from point of origin to point of ultimate destination, for rate purposes.

4. Carriers ⊜⇒26—Lawfulness of through rate being established such rate was applicable, though combination of commodity rates made lower rate.

Lawfulness of through rate being established, such rate was applicable, even though combination of commodity rates made lower rate.

5. Carriers ⊜⇒30—Carriers must collect published rate, without regard to inherent lawfulness, under Interstate Commerce Act (Interstate Commerce Act, §§ 1–4, 6 [49 USCA §§ 1–4, 6]).

Under Interstate Commerce Act, § 6 (49 USCA § 6; Comp. St. § 8569), carriers must collect published rate, without regard to its inherent lawfulness, under sections 1 to 4 (49 USCA §§ 1–4; Comp. St. §§ 8563, 8564–8566).

At Law. Action by James G. Davis, Director General of Railroads, as agent of the United States, against the Krauss Bros. Lumber Company. Judgment for plaintiff.

Milling, Godchaux, Saal & Milling and R. C. Milling, all of New Orleans, La., for plaintiff.

L. Palmer, of New Orleans, La., for defendant.

BURNS, District Judge. The plaintiff Director General of Railroads sues the defendant lumber company for undercharges on two shipments of lumber—one made July 24, 1919, from Iuka, Miss., to Memphis, Tenn., and there reconsigned to Forest City, Ark.; the other made September 19, 1919, from Iuka, Miss., to Memphis, and there reconsigned to Clarendon, Ark.

Defendant admits the making of the shipments and the payments thereon as alleged in the petition, but denies the legality of the rate upon which the suit for undercharge is predicated. By stipulation trial by jury was waived, and by further stipulation it is agreed between the parties that the effect of reconsigning the two shipments at Memphis placed them in the category of through shipments to the several points in Arkansas, respectively, and, inter alia, that the tariffs filed by the plaintiff in this suit evidence that, subsequent to the filing of Supplement No. 20 to I. C. C. No. 1158, the through class rate on lumber from Iuka, Miss., to Forest City and Clarendon, Ark., respectively, was 31½ cents per 100 pounds. This agreement, however, is made purely for the purpose of fixing the amount of such rate named in the tariff, but not admitting the legality thereof.

A further stipulation is "that I. C. C. Conference Ruling No. 220–G provides in part: 'The lawful rate or fare for through movement is the through rate or fare, wherever such through rate or fare exists, even though some lower combination makes a lower rate or fare.' "

At the time of the movements, freight charges in the amount of 18½ cents per 100 pounds were collected on each shipment, these charges being arrived at by adding to the local freight rate from Iuka to Memphis of 7½ cents per 100 pounds the local freight rate of 11 cents per 100 pounds from Memphis to Forest City, and Memphis to Clarendon, respectively; whereas, the undercharge subject of suit is for the difference between the said amount of freight collected, and the freight that would be due on each of the two shipments, based upon a through class rate of 31½ cents per 100 pounds.

It is this last 31½-cent through class rate sought to be collected which defendant resists as illegal, insisting that the rates collected, which were an aggregate of intermediates or a combination of locals on Memphis, were proper and legal. The sole question for decision is, therefore, the legality of the 31½-cent through rate from Iuka. The contention of the defense is: (1) That the rate violates the fourth section of the Interstate

Commerce Act (49 USCA § 4; Comp. St. § 8566); (2) and that it violates section 10 of the Railroad Control Act (Comp. St. § 3115¾j) which is essentially the same as the first section of the Interstate Commerce Act (49 USCA § 1; Comp. St. § 8563)—i. e., that the rate is unreasonable.

The plaintiff insists on its right to recover: (1) Because the shipments became, in fact, through shipments by the reconsignment at Memphis (this point is admitted as stated); (2) the lawful rates applicable on such through shipments were through rates, wherever such through rates exist, even though some combination makes a lower rate; (3) the carrier is bound to collect the legal tariff rate, irrespective of error; and (4) the 31½ cents per 100 pounds, being a through rate, legally on file with the Interstate Commerce Commission, on the date of movement, was the proper, applicable rate.

The contention of defendant cannot be sustained. The fourth and sixth sections (49 USCA §§ 4, 6; Comp. St. §§ 8566, 8569), considered together, intend that, if a carrier filed tariffs which contained a through rate exceeding the sum of the locals, such rate would be prima facie unlawful under section 4, unless protected under one of its provisions; but these were materially affected by section 10 of the Railroad Control Act (March 21, 1918). The purpose of that act was to turn the railroads over to the President, who was empowered to initiate tariffs by the mere filing of same with the Commission under that section. Under this authority the President issued General Order No. 28 (May 25, 1918), declaring a general advance in rates, including all charges heretofore published, but not made effective, and providing the effective dates; and thereafter the Interstate Commerce Commission issued Fourth Section No. 7316, granting relief to the Director General of Railroads, recognizing his initiated and prescribed rates under General Order No. 28, and granting him relief from the long-and-short-haul and aggregate-of-the-intermediates provision of section 4, exempting the carriers from the provisions of that section. This was followed by the President, through the Director General, filing with the Commission Supplement No. 20 to I. C. C. Tariff No. 1158, which shows that the schedules contain rates that are departures from the fourth section, under authority of the I. C. C. Fourth Section Order No. 7316 of May 27, 1918.

[1] In the light of these statutes and orders, whereby, inter alia, class rates such as we are concerned with here were increased 25 per

cent., the Commission, having received the President's certificate by General Order No. 28, certifying the necessity therefor, expressly authorized the departure from the fourth section, so that the rates so filed, when Supplement No. 20 to I. C. C. No. 1158 was filed, became legal. Plaintiff's Exhibit A shows that the rate of 31½ cents per 100 pounds was the legal rate, so created at the time the shipments moved; that therefore, prior to the date of Supplement No. 20, a through rate was in effect from Iuka to Forest City and Clarendon, which was increased, so as to amount to 31½ cents, by the filing of Supplement 20, and immediately thereafter that rate became legal, irrespective of whether or not it was originally so. Fourth Section Order I. C. C. No. 7601, adopted March 1, 1920, superseding I. C. C. No. 7316, confirms this conclusion. The question of the relief granted by No. 7316 in pursuance of General Order No. 28, being under consideration, recognized and authorized a continuance of all rates without observing the provisions of the fourth section, including those not in accord therewith, not authorized by orders of the Commission or protected by appropriate fourth section application for relief.

[2] Likewise defendant's contention that this court should declare the 31½-cent through class rate unreasonable under section 10 of the Railroad Control Act is untenable. Its counsel concedes that the question of reasonableness involves an administrative question, which it is the function of the Interstate Commerce Commission to determine (citing Texas & P. Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075), but argues that the courts may determine the question, because a through rate greater than the sum of its intermediates is prima facie unreasonable, and unlawful, under both section 1 and section 4, and because the mere fact of its existence over the sum of the intermediates would condemn it as a matter of law, and suit might be filed in a court of law without reference to the Commission, citing a case decided in the Northern district of Georgia, entitled Patterson v. L. & N. Ry. Co. (judgment affirmed [C. C. A.] 2 F.[2d] 592 and 269 U. S. 1, 46 S. Ct. 8, 70 L. Ed. 131), as the only case in which such a question has ever been passed on, and Milburn Wagon Co. v. Lake Shore & Mich. So. R. Co., 18 I. C. C. 144, and referring to Davis v. Portland Seed Co., 264 U. S. 403, 44 S. Ct. 380, 68 L. Ed. 762.

It is further argued that, as a matter of law, the rate is prima facie unreasonable under the principle applied by the Commis-

sion, and by which it has made the aggregate of intermediates clause ironclad, and finally contending that, since this court cannot fail to find that the high through rate was unreasonable, the power to so decide should be assumed, and the question determined under paragraph 8 of section 24 of the Judicial Code (28 USCA § 41[8]), granting jurisdiction in suits for violation of the interstate commerce laws, and that such power in the District Courts, as they originally had to determine the reasonableness of rates, was clearly recognized by the Supreme Court in Texas & P. Ry. v. Abilene Cotton Oil Co., 204 U. S. 426, 436, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; but I agree with defendant's counsel that, since the enactment of the Interstate Commerce Act (49 USCA § 1 et seq.; Comp. St. § 8563 et seq.), the situation now is not as simple as it once was. It is unfortunate for the defendant that relief was not timely sought at the hands of the Commission, and that its claim is barred by limitation; but it is precisely the case he cites (Texas & P. Ry. Co. v. Abilene Cotton Oil Co., supra) that should disabuse his mind of the idea that District Courts may now pass upon the reasonableness of rates, without a finding by the Interstate Commerce Commission to that effect.

The review of the purposes and aims of Congress in the passage of that act, and its measure of the general scope of the Commission's powers and duties in the premises, leaves no doubt that the power is not now vested in the courts. Nor can the mere lapse of time, or these difficulties of the defendant, who endeavors to distinguish his remedy as a defense from the same remedy when urged as a cause of action, alter the fact that the paramount purpose of the law is to preserve a uniformity of rates on broad grounds of public policy, the means to which are precisely defined and must be diligently pursued. The shipper must attack the reasonableness of a rate before the Commission, and not in the courts. Great Northern R. Co. v. Merchants' Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943; Oregon R. & N. Co. v. Coolidge, 59 Or. 5, 116 P. 93; Baltimore & O. R. R. Co. v. La Due, 128 App. Div. 594, 112 N. Y. S. 964. These views dispose of the defense made.

[3-5] The contrary contentions of plaintiff are amply sustained on abundant authority. There are no disputed facts in the case. I indorse the citation by plaintiff of Detroit Traffic Association v. Lake Shore & M. S. R. Co. et al., 21 I. C. C. 258, and Murray v. Director General, 69 I. C. C. 482, to the effect that, because of the reconsignment of the two shipments at Memphis, they are to be regarded as through shipments from the point of origin to the point of ultimate destination. The finding of lawfulness of the through class rate in disposing of defendant's contention should suffice. The lawfulness being established, the rate was applicable, even though the combination of commodity rates makes a lower rate. To this effect is U. S. Nickel Co. v. Director General and Raritan River R. R. Co., 81 I. C. C. 162; Morgan et al. v. Missouri, Kansas & Texas R. Co., 12 I. C. C. 526. Others are copiously cited by plaintiff, and therefore, since the rate in question was a through rate governing these lumber shipments, legally in force on the date these shipments moved, then it was applicable. So, too, section 6 compels the carriers to collect the published rate, without regard to its inherent lawfulness under sections 1, 2, 3, and 4 of the Interstate Commerce Act (49 USCA §§ 1–4; Comp. St. §§ 8563, 8564–8566). Davis v. Portland Seed Co., 264 U. S. 403, 44 S. Ct. 380, 68 L. Ed. 762. Having found this publication as a fact, it should be sufficient to support a verdict and judgment.

Accordingly a judgment may be entered for plaintiff, with costs.