## DAVIS, AS AGENT, ETC. v. PORTLAND SEED COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

## SAN FRANCISCO & PORTLAND STEAMSHIP COMPANY v. PARRINGTON.

## DAVIS, AGENT UNITED STATES RAILROAD ADMINISTRATION, v. PARRINGTON.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

## GREAT NORTHERN RAILWAY COMPANY v. McCAULL-DINSMORE COMPANY.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

Nos. 114, 122, 123, 209.   Argued February 20, 1924.—Decided April 7, 1924.

1. The long and short haul provision of the Interstate Commerce Act (§ 4) is violated, and the carrier incurs, *prima facie* at least, the penalties prescribed by § 10, by publishing, without authority from the Commission, a rate for a longer haul lower than that scheduled for a shorter haul of the same kind of property over the same line or route in the same direction.   P. 424.
2. In such case a shipper who is charged the higher rate for the shorter haul is entitled, under § 8, to the full amount of his resulting damages, with reasonable counsel fees, but not to collect from the

carrier the difference between the rate paid and the lower rate published for the longer haul upon the theory that the latter was the only legal rate and the difference an illegal exaction recoverable without proof of damages or regard to the intrinsic reasonableness of the rate. *Pennsylvania R. R. Co.* v. *International Coal Co.,* 230 U. S. 184. Pp. 415, 424.

3. The ruling in *Kansas City Southern Ry. Co.* v. *Wolf,* 261 U. S. 133, that actions of this kind are subject to the two year limitation (Act to Regulate Commerce, §§ 9 and 16,) is adhered to. P. 426.

281 Fed. 10; and 154 Minn. 28, reversed.

REVIEW of four judgments recovered by shippers as overcharges alleged to have been exacted by the respective defendant carriers in violation of the "long and short haul clause" of the Interstate Commerce Act.

No. 114 was an action in the District Court for the difference between the freight paid during federal control on a shipment of alfalfa seed to Walla Walla, Washington, from Roswell, New Mexico, and the amount that would have been paid if a lower rate scheduled from a more distant point over the same route had been applied.

Nos. 122 and 123 were like actions in the District Court, upon claims assigned by various shippers, in respect of sugar transported by the above-named steamship company, wholly by water, from San Francisco, California, to Portland and Astoria, Oregon, partly while that company and its northern rail connection, the Oregon-Washington Railroad & Navigation Company, were under federal control, and at times when the joint rate of these carriers from San Francisco to North Portland, a greater distance, as it was claimed, was less than the local rate paid for the water carriage to Portland and Astoria. In these three cases the judgments for the plaintiffs were affirmed by the Circuit Court of Appeals; and its judgments were brought here by error and certiorari.

In No. 209, here by certiorari, the Supreme Court of Minnesota affirmed a like judgment in favor of a shipper whose shipments of wheat, from Benchland, Montana, to

Minneapolis and Duluth, Minnesota, were charged for by the carrier at a published tariff rate higher than the published rate to the same destination from Billings, a more distant point.

*Mr. John F. Finerty* and *Mr. Arthur C. Spencer,* with whom *Mr. Henry W. Clark, Mr. C. E. Cochran* and *Mr. John F. Reilly* were on the briefs, for petitioner in No. 114 and plaintiffs in error in Nos. 122 and 123.   See *post,* p. 601.

The District Court was without jurisdiction, exclusive original jurisdiction being lodged in the Interstate Commerce Commission.   *Texas & Pac. Ry. Co.* v. *Abilene Co.,* 204 U. S. 426; *Balt. & Ohio R. R. Co.* v. *Pitcairn Coal Co.,* 215 U. S. 481; *Robinson* v. *Balt. & Ohio R. R. Co.,* 222 U. S. 506; *Mitchell Coal Co.* v. *Pennsylvania R. R. Co.,* 230 U. S. 247; *Morrisdale Coal Co.* v. *Pennsylvania R. R. Co.,* 230 U. S. 304; *Texas & Pac. Ry. Co.* v. *American Tie Co.,* 234 U. S. 138; *Northern Pac. Ry. Co.* v. *Solum,* 247 U. S. 477; *Director General* v. *Viscose Co.,* 254 U. S. 498; *Pennsylvania R. R. Co.* v. *International Coal Co.,* 230 U. S. 184; *Same* v. *Puritan Coal Co.,* 237 U. S. 121; *Same* v. *Sonman Coal Co.,* 242 U. S. 120; *St. Louis, etc., Ry. Co.* v. *Hasty & Sons,* 255 U. S. 252.

Section 4 of the Commerce Act (the long and short haul clause), is a statute relating to a form of discrimination and not one merely declaring the intermediate rate unlawful.   *Parsons* v. *Chicago & N. W. Ry. Co.,* 167 U. S. 447.

Discrimination may be removed either by raising one rate, lowering the other, or changing both, and the fact that a rate discriminates against one locality in favor of another one does not in itself entitle the first locality to the same rate as the tariff provides for the second.   *American Exp. Co.* v. *Caldwell,* 244 U. S. 617; *St. Louis S. W. Ry. Co.* v. *United States,* 245 U. S. 144; *Hillsborough Mills* v. *Boston & Maine R. R.,* 269 Fed. 816.

Section 6 of the Commerce Act requires carriers to collect the rates published in their tariffs and forbids transportation except when an applicable rate is contained in a published tariff. In view of this section the carriers were compelled to collect their published rates or refuse to accept the commodities for shipment. Commerce Act, §§ 4, 6.

Under § 6 the carriers must collect their published rates, even though they are violative of other sections of the act. *Armour Co.* v. *United States,* 209 U. S. 56; *Pittsburgh, etc., Ry. Co.* v. *Fink,* 250 U. S. 577; *Keogh* v. *Chicago & N. W. Ry. Co.,* 260 U. S. 156; *Pennsylvania R. R. Co.* v. *International Coal Co.,* 230 U. S. 184; *Poor Grain Co.* v. *C. B. & Q. Ry. Co.,* 12 I. C. C. 418; *Interstate Remedy Co.* v. *American Exp. Co.,* 16 I. C. C. 436; *Crescent Coal Co.* v. *C. & E. I. Ry. Co.,* 24 I. C. C. 149.

Under plaintiff's theory that the rate from Roswell was not a legally published rate, there was no legally published rate at all—the transportation must therefore have been unlawful, and the courts will not aid shippers in collecting any part of the charges which they paid. *Payne* v. *Bassett,* 235 S. W. 917.

The mere fact that a rate is violative of the long and short haul clause, does not entitle shippers to an intermediate point to recover the excess over the rate to the more distant point. *Parsons* v. *Chicago & N. W. Ry. Co.,* 167 U. S. 447; *International Coal Co.* v. *Pennsylvania R. R. Co.,* 230 U. S. 184; *Iten Biscuit Co.* v. *C. B. & Q. R. R. Co.,* 53 I. C. C. 729; *Topeka Banana Dealers' Assn.* v. *St. Louis, etc., R. R. Co.,* 13 I. C. C. 620.

The long line of decisions of the Interstate Commerce Commission in Fourth Section violation cases holding that mere proof of the difference in the rates is no evidence of damage, should be followed by this Court, because not manifestly incorrect. *Heath* v. *Wallace,* 138 U. S. 573; *United States* v. *Cerecedo,* 209 U. S. 337.

The Federal Control Act, § 10, and Transportation Act, 1920, § 206 (c), lodged exclusive original jurisdiction of cases against the Director General involving violations of the Commerce Act in the Interstate Commerce Commission. *Northern Pac. Ry. Co.* v. *North Dakota,* 250 U. S. 135; *Alabama, etc., Ry. Co.* v. *Journey,* 257 U. S. 111; 25 R. C. L. 1010; *Phillips Co.* v. *Grand Trunk Ry. Co.,* 236 U. S. 662; *Kansas City So. Ry. Co.* v. *Wolf,* 261 U. S. 133; *Missouri Pac. R. R. Co.* v. *Ault,* 256 U. S. 554.

No violation of the Fourth Section was proved, because the evidence showed that there was no transportation from the more distant point, the rate being merely a paper rate. *Parsons* v. *Chicago & N. W. Ry. Co.,* 167 U. S. 447; Judson, Interstate Commerce, 3d ed., p. 529; *Topeka Banana Dealers' Assn.* v. *St. Louis, etc., R. R. Co.,* 13 I. C. C. 620; *Anaconda Copper Co.* v. *Director General,* 64 I. C. C. 136; *Lehigh Valley R. R. Co.* v. *Rainey,* 112 Fed. 487.

During federal control rates were initiated and maintained under order of the President, and the Fourth Section was therefore inapplicable to them. Federal Control Act, § 10; *Northern Pac. Ry. Co.* v. *North Dakota,* 250 U. S. 135; *Missouri Pac. R. R. Co.* v. *Ault,* 256 U. S. 554; *Alabama, etc., Ry. Co.* v. *Journey,* 257 U. S. 111.

If there was a departure from the Fourth Section it was covered by appropriate orders of the Commission.

The measure of damages in Fourth Section cases is not the difference between rates. *Parsons* v. *Chicago & N. W. Ry. Co.,* 167 U. S. 447; *Pennsylvania R. R. Co.* v. *International Coal Co.,* 230 U. S. 184; *Hillsborough Mills* v. *Boston & Maine R. R.,* 269 Fed. 816; *Homestead Co.* v. *Des Moines Elec. Co.,* 226 Fed. 49; *Atchison, etc. Ry. Co.* v. *Spiller,* 246 Fed. 1; *Clark Bros. Coal Co.* v. *Pennsylvania R. R. Co.,* 238 Fed. 642; *Lehigh Valley R. R. Co.* v. *American Hay Co.,* 219 Fed. 539.

Under § 15 of the Commerce Act, as amended in 1910 and 1920, transportation wholly by water is not subject to the act, notwithstanding the provisions of the Panama Canal Act. Commerce Act, § 15, 36 Stat. 552; Transportation Act 1920, §§ 408, 412, 413, 418; 41 Stat. 482, 483, 485; Fed. Stats. Anno., 1920, Supp., pp. 104–106; Panama Canal Act, 37 Stat. 560, 566; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149; 2 Lewis' Sutherland Statutory Constr., 2d ed., p. 667.

Assignments of claims against the Director General not complying with § 3477, Rev. Stats., are void. *Spoffard* v. *Kirk,* 97 U. S. 484; *National Bank* v. *Downie,* 218 U. S. 345; *Missouri Pac. R. R. Co.* v. *Ault,* 256 U. S. 554; *Seaboard Air Line Ry.* v. *United States,* 256 U. S. 655.

No liability can attach either to the Steamship Company or the Director General on shipments moving during the time the Steamship Company's vessels were being operated by the Shipping Board. *Missouri Pac. R. R. Co.* v. *Ault,* 256 U. S. 554; *Davis* v. *Zirkle,* 138 N. E. 266.

There was further no violation of the Fourth Section because the rates to Portland and Astoria were local rates and the paper rates to North Portland were joint rates. *Chicago & N. W. Ry. Co.* v. *Osborne,* 52 Fed. 912; *United States* v. *Mellen,* 53 Fed. 229; *Interstate Commerce Comm.* v. *Cincinnati, etc., Ry. Co.,* 56 Fed. 925; 162 U. S. 184; *Allen & Lewis Co.* v. *Oregon Ry. & Nav. Co.,* 98 Fed. 16; *Parsons* v. *Chicago & N. W. Ry. Co.,* 167 U. S. 447.

The carriers were required during the first six months after federal control to collect the rates which they found in the Director General's tariffs, whether they conformed to the Fourth Section or not. Transportation Act, § 208 (a); *Wasatch Coal Co.* v. *Baldwin,* 60 Utah, 397; *Public Service Comm.* v. *New York Cent. R. R. Co.,* 185 N. Y. S. 267.

All claims antedating February 12, 1919, are barred because not brought within two years. Commerce Act,

§ 16; *Phillips Co.* v. *Grand Trunk Ry. Co.,* 236 U. S. 662; *Kansas City So. Ry. Co.* v. *Wolf,* 261 U. S. 133; Transportation Act, § 206 (f); *Eberhart* v. *United States,* 204 Fed. 884.

*Mr. F. G. Dorety,* with whom *Mr. R. J. Hagman* was on the brief, for petitioner in No. 209.

*Mr. James G. Wilson* for respondent in No. 114 and defendant in error in Nos. 122 and 123.

The District Court had jurisdiction.

Where the practice is directly prohibited by statute, the person injured thereby need not go originally to the Commission but may sue directly in court. *Pennsylvania R. R. Co.* v. *International Coal Co.,* 230 U. S. 184; *Same* v. *Puritan Coal Co.,* 237 U. S. 121; *Same* v. *Sonman Coal Co.,* 242 U. S. 120; *Mitchell Coal Co.* v. *Pennsylvania R. R. Co.,* 230 U. S. 247; *Morrisdale Coal Co.* v. *Same,* 230 U. S. 304; *St. Louis, etc., Ry. Co.* v. *Hasty & Sons,* 255 U. S. 252; *Great Northern Ry. Co.* v. *Merchants Elevator Co.,* 259 U. S. 285; Commerce Act, §§ 8, 9.

The transportation (in Nos. 122 and 123), though wholly by water, was subject to the Interstate Commerce Act.

The question whether the assignment of the claims against the Director General to the defendant in error (in No. 123) was void because not complying with § 3477, Rev. Stats., is not before this Court, it not having been raised in the lower court. Claims of this character may be sued upon by an assignee. *Spiller* v. *Atchison, etc., Ry. Co.,* 253 U. S. 134; *Missouri Pac. R. R. Co.* v. *Ault,* 256 U. S. 559; *Parrington* v. *Davis,* 285 Fed. 741; *Seaboard Air Line Ry.* v. *United States,* 256 U. S. 655.

Carriers (in Nos. 122 and 123) are liable notwithstanding certain of the boats on which part of the sugar was handled were under requisition of the United States Shipping Board for a portion of the period.

North Portland and Portland are on the same route, Portland being intermediate, on shipments from San Francisco to North Portland.

The actual showing that shipments have been made to North Portland as a condition to recovery is not necessary. *United States* v. *Louisville & Nashville R. R. Co.* 235 U. S. 322; *California Adjustment Co.* v. *Atchison, etc. Ry. Co.*, 179 Cal. 140.

The objection that certain of the claims sued on in Nos. 122 and 123 are barred by the statute of limitations, for the reason that the action was not commenced within two years was not properly made in the lower court, except as to those claims prior to January 1, 1918, in the case against the Steamship Company.

Reliance is had on *Kansas City So. Ry.* v. *Wolf*, 261 U. S. 133. That case had not been decided in this Court at the time the present cases were decided. The decision in that case in the lower court was to the contrary, as was the decision in the present cases. The Commerce Act itself does not specifically prescribe the limitation period for actions commenced by shippers before the court. The act does, by §§ 8 and 9, give a choice of forum either before the Commission or the District Court of the United States, but the act only specifically places a limitation upon proceedings before the Commission.

This Court, in the *Wolf Case*, bases its decision entirely upon its former decision in *Phillips Co.* v. *Grand Trunk Ry. Co.*, 236 U. S. 662; but that was a case on a claim which admittedly had to be commenced originally before the Commission. Such a case had been commenced before the Commission, not by the plaintiff in the *Phillips Case*, but by another plaintiff on a similar claim. The Commission had established the right to recover and the plaintiff in the *Phillips Case* commenced his action in court based upon the proceedings before the Commission, and the Court properly held that the per-

son commencing in the court could not have a different period of limitation than that before the Commission.

In the *Wolf Case* this Court holds that the same principle applies. We respectfully ask for a reconsideration of this ruling. The Court in the *Phillips Case* says that in those cases where the statute reads as does the Commerce Act, to-wit: that the proceeding shall be commenced within two years from the time the cause of action accrues and not after, the liability is destroyed. If this is the case, then we submit that the same rule should apply to all questions of damages in any case which might have been submitted to the Commission, whether it may be sued upon in the state court, the United States court, or before the Commission; and this Court has in several cases since the *Phillips Case* permitted recoveries in cases involving interstate traffic which could have been submitted to the Commission, but were commenced in the state courts, and recovery was permitted for periods considerably in excess of two years. *Pennsylvania R. R. Co.* v. *Puritan Coal Co.,* 237 U. S. 121; *Same* v. *Sonman Coal Co.,* 242 U. S. 120; *Same* v. *Stineman Coal Co.,* 242 U. S. 300.

This contention is further confirmed by consideration of *Morrisdale Coal Co.* v. *Pennsylvania R. R. Co.,* 230 U. S. 304; in connection with *Pennsylvania R. R. Co.* v. *Puritan Coal Co., supra;* and *Same* v. *Sonman Coal Co., supra.*

We respectfully submit that the rule should only be enforced as to those cases in which primary action must be brought before the Commission.

The Fourth Section order of the Interstate Commerce Commission, made in connection with the general advance in rates, can have no bearing in these cases, for the reason that it is not pleaded or relied on in the court below. *Robinson* v. *Balt. & Ohio R. R. Co.,* 222 U. S. 511. Furthermore, the order had not the general carry-all effect that opposing counsel contends for it.

As for the measure of damages, under the law the lower rate is the only rate which can be applied, as the higher rate did not exist. *United States* v. *Louisville & Nashville R. R. Co.*, 235 U. S. 314; *California Adjustment Co.* v. *Atchison, etc., Ry. Co.*, 179 Cal. 140; *Louisville & Nashville R. R. Co.* v. *Walker*, 110 Ky. 961.

It is true that the Interstate Commerce Commission has refused to follow this rule, basing its decisions upon *Pennsylvania R. R. Co.* v. *International Coal Co.*, 230 U. S. 184. That case, however, was not one for recovery of damages which were specifically provided by statute, but was an action for damage by one person who had been receiving a rebate on account of the fact that another shipper had received a greater rebate than he, and it was claimed that his measure of damages was the difference in the two rebates; but the Court held that, as neither person was claiming under a legal rate, he could only recover such damages as he could prove by reason of the fact that the other shipper had received a greater rebate. See *Southern Pacific Co.* v. *California Adjustment Co.*, 237 Fed. 965; *Southern Pacific Co.* v. *Darnell-Taenzer Co.*, 245 U. S. 534.

In the present cases the plaintiffs have paid out of pocket an amount which the statute said should not be exacted of them, and their damages are definitely fixed by the statute.

The effect of § 10 of the Federal Control Act and an order made in 1918 increasing then existing rates, was not raised or relied on in the court below. Furthermore, the violations in question were not thus validated. *Missouri Pac. R. R. Co.* v. *Ault*, 256 U. S. 560; *Johnston* v. *Atchison, etc., Ry. Co.*, 51 I. C. C. 356; *Rice Potato Co.* v. *Balt. & Ohio R. R. Co.*, 51 I. C. C. 365.

Transportation Act of 1920, § 206, did not transfer the jurisdiction of these matters from the court to the Commission, but shows the intention of Congress that the

jurisdiction of all controversies remain in the same courts or tribunals as before or during federal control.

It is not necessary to prove actual shipments from the more distant point. *United States* v. *Louisville & Nashville R. R. Co.,* 235 U. S. 322; *California Adjustment Co.* v. *Atchison, etc., Ry. Co.,* 179 Cal. 140; *Beeghly* v. *Public Util. Comm.,* 104 Oh. St. 158.

*Mr. Frederick M. Miner, Mr. John P. Devaney, Mr. Dewitt Clinton Edwards* and *Mr. Walter W. Patterson* filed a brief on behalf of the respondent in No. 209, resisting the petition for a writ of certiorari.

*Mr. Frank R. Wehe* and *Mr. Alfred J. Harwood,* by leave of Court, filed a brief as *amici curiae* in Nos. 122 and 123.

*Mr. John F. Finerty,* by leave of Court, filed a brief as *amicus curiae,* on behalf of the Director General of Railroads, in No. 209.

Mr. JUSTICE McREYNOLDS delivered the opinion of the Court.

The courts below affirmed judgments for the plaintiffs in four separate actions brought to recover alleged overcharges on freight said to have been demanded by the respective carriers in violation of the long and short haul clause, Fourth Section, Interstate Commerce Act, c. 104, 24 Stat. 379, 380; c. 309, 36 Stat. 539, 547; c. 91, 41 Stat. 456, 480, which declares—

" That it shall be unlawful for any common carrier subject to the provisions of this Act to charge or receive any greater compensation in the aggregate for the transportation of passengers, or of like kind of property, for a shorter than for a longer distance over the same line or route in the same direction, the shorter being included within the longer distance, or to charge any greater com-

pensation as a through rate than the aggregate of the intermediate rates subject to the provisions of this Act, but this shall not be construed as authorizing any common carrier within the terms of this Act to charge or receive as great compensation for a shorter as for a longer distance: *Provided,* That upon application to the Commission such common carrier may in special cases, after investigation, be authorized by the Commission to charge less for longer than for shorter distances for the transportation of passengers or property; and the Commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section; [The Transportation Act, 1920, added] but in exercising the authority conferred upon it in this proviso the Commission shall not permit the establishment of any charge to or from the more distant point that is not reasonably compensatory for the service performed. . . ."

All the cases involve the same fundamental question of law. The essential charge is that the carrier demanded and received greater compensation for transporting freight for a shorter distance than its published rate for transporting like property for a longer distance over the same route and in the same direction.

It will suffice to state the salient facts and issues disclosed by record No. 114—*Davis, Agent,* v. *Portland Seed Company.* They are typical.

Pecos is in Western Texas, 160 miles south of Roswell, N. M. A line of the Atchison, Topeka & Santa Fe Railway system joins these points and extends northward to Denver, Colorado, where it connects with the Union Pacific System which leads into the Northwest. January 4, 1919, the carrier received a car of alfalfa seed at Roswell for transportation to Walla Walla, Washington, by way of Denver. Three weeks later respondent Portland Seed Company received this car at destination and paid

freight charges reckoned at $2.44 per hundred pounds—the scheduled rate from Roswell. During all of January, 1919, the initial carrier's published schedule specified $1.515 per hundred pounds as the rate for transporting alfalfa seed from Pecos to Walla Walla through Roswell and Denver; and no application had been made to the Interstate Commerce Commission for permission to charge less for the longer than for the shorter haul. The Seed Company demanded judgment for the excess above the Pecos rate, as an overcharge illegally exacted and recoverable as money had and received.

The insistence is that under the long and short haul clause the lower published rate from Pecos became the maximum which the carrier could charge for the shipment from Roswell, notwithstanding the higher published rate therefor; that the sum charged above the Pecos rate amounted to an illegal exaction, recoverable without other proof of actual damage and without regard to the intrinsic reasonableness of either rate.

Relying on *Pennsylvania R. R. Co.* v. *International Coal Co.*, 230 U. S. 184, the Interstate Commerce Commission has definitely rejected respondent's theory by many opinions, and holds that while a charge prohibited by the long and short haul clause, § 4, may subject the carrier to prosecution by the Government it does not afford adequate basis for reparation where there is no other proof of pecuniary damage. *Nix & Co.* v. *Southern Ry. Co.* (1914), 31 I. C. C. 145; *S. J. Greenbaum Co.* v. *Southern Ry. Co.*, 38 I. C. C. 715; *Chattanooga Implement & Mfg. Co.* v. *Louisville & Nashville R. R. Co.*, 40 I. C. C. 146; *LaCrosse Shippers' Assn.* v. *C. I. & L. Ry. Co.*, 43 I. C. C. 520; *Oregon Fruit Co.* v. *Southern Pacific Co.*, 50 I. C. C. 719; *Iten Biscuit Co.* v. *C. B. & Q. R. R. Co.*, 53 I. C. C. 729; *Illinois Brick Co.* v. *Director General* (1920), 57 I. C. C. 320, 323.

Counsel insist that under § 4 it was unlawful to charge compensation above the published Pecos rate for the

transportation from Roswell to Walla Walla. Therefore, the published Roswell rate being unlawful, non-existent indeed, the Pecos rate became the only one in force. *United States* v. *Louisville & Nashville R. R. Co.*, 235 U. S. 314, 322, 323, is relied upon; and it is said that the opinion there interprets the long and short haul clause as " absolutely prohibiting the existence " of higher rates for shorter hauls unless approved by the Commission. Read with the real issue in mind, the opinion gives no support to respondent's argument. The Interstate Commerce Commission held that certain reshipping privileges granted to Nashville but refused to Atlanta amounted to unreasonable preference under § 3 and ordered the carrier to discontinue them. The Commerce Court restrained the enforcement of this order. This Court declared that the challenged privileges were prohibited by the long and short haul clause; that § 4 controlled the right to grant them; that they had not been authorized by the Commission; and therefore it would be unlawful to continue them. Accordingly, the order to desist was approved and the decree of the Commerce Court reversed. No disagreement with *Pennsylvania R. R. Co.* v. *International Coal Co.* was suggested. The Court said—

(322–3) " The express or implied statutory recognition of the authority on the part of carriers to primarily determine for themselves the existence of substantially similar circumstances and conditions as a basis of charging a higher rate for a shorter than for a longer distance within the purview of § 4 of the Act to Regulate Commerce and the right to make a rate accordingly to continue in force until on complaint it was corrected in the manner pointed out by statute, ceased to exist after the adoption of the amendment to § 4 by the Act of June 18, 1910, c. 309, 36 Stat. 539, 547. This results from the fact that by the amendment in question the original power to determine

the existence of the conditions justifying the greater charge for a shorter than was exacted for a longer distance, was taken from the carriers and primarily vested in the Interstate Commerce Commission, and for the purpose of making the prohibition efficacious it was enacted that after a time fixed no existing rate of the character provided for should continue in force unless the application to sanction it had been made and granted. *Intermountain Rate Cases,* 234 U. S. 476. If then it be that the rebilling privilege which is here in question, disregarding immaterial considerations of form and looking at the substance of things, was, when originally established, an exertion of the authority conferred or recognized by § 4 of the act, as there is no pretense that permission for its continuance had been applied for as required by the amendment and the statutory period for which it could be lawfully continued without such permission had expired, it follows that its continued operation was manifestly unlawful and error was committed in permitting its continuance under the shelter of the injunction awarded by the court below."

The opinion does not discuss the carrier's liability to shippers who had paid higher rates for the shorter hauls. No doubt similar relief would have been granted by the Commission if the situation here revealed had been brought before it.

Respondent has not asked an injunction against illegal rates. It seeks to secure something for itself without proof of pecuniary loss consequent upon the unlawful act. A similar effort failed in *Pennsylvania R. R. Co.* v. *International Coal Co., supra.* The International Company shipped 40,000 tons of coal from the Clearfield district, paying full schedule rates. The carrier had allowed other shippers from and to the same places at the same time rebates ranging from five to thirty-five cents per ton. Without alleging or proving pecuniary injury re-

sulting to itself from this unlawful action, the Company sought to recover like concessions upon all its shipments. Through Mr. Justice Lamar, this Court said—

(196–7) " The published tariffs made no distinction between contract coal and free coal, but named one rate for all alike. That being true, only that single rate could be charged. When collected, it was unlawful, under any pretense or for any cause, however equitable or liberal, to pay a part back to one shipper or to every shipper. The statute required the carrier to abide absolutely by the tariff. It did not permit the Company to decide that it had charged too much and then make a corresponding rebate; nor could it claim that it had charged too little and insist upon a larger sum being paid by the shipper. . . . The tariff, so long as it was of force, was, in this respect, to be treated as though it had been a statute, binding as such upon Railroad and shipper alike. If, as a fact, the rates were unreasonable the shipper was nevertheless bound to pay and the carrier to retain what had been paid, leaving, however, to the former the right to apply to the Commission for reparation."

(200) " Though the Act has been held to be in many respects highly penal, yet there was no fixed measure of damage in favor of the plaintiff. But, as said in *Parsons* v. *Chicago & N. W. Railway,* 167 U. S. 447, 460, construing this section (8), ' before any party can recover under the Act he must show not merely the wrong of the carrier, but that that wrong has in fact operated to his injury.' Congress had not then and has not since given any indication of an intent that persons not injured might, nevertheless, recover what though called damages would really be a penalty, in addition to the penalty payable to the Government. On the contrary, and in answer to the argument that damages might be a cover for rebates, the Act of June 18, 1910 (36 Stat. 539, c. 309),

provided that where a carrier misquotes a rate it should pay a penalty of $250, not to the shipper, but to the Government, recoverable by a civil action brought by the United States.  35 Stat. 166.  Congressional Record (1910), 7569.  The danger that payment of damages for violations of the law might be used as a means of paying rebates under the name of damages is also pointed out by the Commission in 12 I. C. C. 418–421, 423; 14 I. C. C. 82."

(200) " It is said, however, that it is impossible to prove the damages occasioned one shipper by the payment of rebates to another; and that if the plaintiff is not entitled to recover as damages the same drawback that was paid to its competitor, the statute not only gives no remedy but deprives the plaintiff of a right it had at common law to recover this difference between the lawful and the unlawful rate."

(200–1) " We are cited to no authority which shows that there was any such ancient measure of damages, and no case has been found in which damages were awarded for such discrimination.  Indeed, it is exceedingly doubtful whether there was at common law any right of action for any sort of damages in a case like this, while this statute does give a clear, definite and positive right to recover for unjust discrimination."

(201–2) *"Union Pacific R. R.* v. *Goodridge,* 149 U. S. 680, 709, involved the construction of the Colorado statute, which did not, as does the Commerce Act, compel the carrier to adhere to published rates, but required the railroad to make the same concessions and drawbacks to all persons alike, and for a failure to do so made the carrier liable for three times the actual damage sustained or overcharges paid by the party aggrieved.  This distinction is also to be noted in the English cases cited.  The Act of Parliament did not require the carrier to maintain its published tariff but made the lowest rate the lawful rate.

Anything in excess of such lowest rate was extortion and might be recovered in an action at law as for an overcharge. *Denaby* v. *Manchester Ry.*, L. R. 11 App. Cases, 97, 116. But the English courts make a clear distinction between overcharge and damages, and the same is true under the Commerce Act. For if the plaintiff here had been required to pay more than the tariff rate it could have recovered the excess, not as damages but as overcharge, and while one count of the complaint asserted a claim of this nature, the proof did not justify a verdict thereon, for the plaintiff admitted that it had only paid the lawful rates named in the tariff. Of course, no part of such payment of lawful rates can be treated as an overcharge or as an extortion."

(202–3) " Having paid only the lawful rate plaintiff was not overcharged, though the favored shipper was illegally undercharged. For that violation of law, the carrier was subject to the payment of a fine to the Government and, in addition, was liable for all damages it thereby occasioned, the plaintiff or any other shipper. But, under § 8, it was only liable for damages. Making an illegal undercharge to one shipper did not license the carrier to make a similar undercharge to other shippers, and if having paid a rebate of 25 cents a ton to one customer, the carrier in order to escape this suit had made a similar undercharge or rebate to the plaintiff, it would have been criminally liable, even though it may have been done in order to equalize the two companies. For, under the statute, it was not liable to the plaintiff for the amount of the rebate paid on contract coal, but only for the damages such illegal payment caused the plaintiff. The measure of damages was the pecuniary loss inflicted on the plaintiff as the result of the rebate paid. Those damages might be the same as the rebate, or less than the rebate, or many times greater than the rebate; but unless they were proved they could not be recovered.

Whatever they were they could be recovered, because § 8 expressly declares that wherever the carrier did an act prohibited or failed to do any act required, it should be '*liable to the person injured thereby for the full amount of damages sustained in consequence of such violation, . . . together with reasonable attorney's fee.*'"

(206)   "To adopt such a rule and arbitrarily measure damages by rebates would create a legalized, but endless, chain of departures from the tariff; would extend the effect of the original crime, would destroy the equality and certainty of rates, and, contrary to the statute, would make the carrier liable for damages beyond those inflicted and to persons not injured. The limitation of liability to the persons damaged and to an amount equal to the injury suffered is not out of consideration for the carrier who has violated the statute. On the contrary, the act imposes heavy penalties, independent of the amount of rebate paid, and as each shipment constitutes a separate offense, the law in its measure of fine and punishment is a terror to evil doers. But for the public wrong and for the interference with the equal current of commerce these penalties or fines were made payable to the Government. If by the same act a private injury was inflicted a private right of action was given. But the public wrong did not necessarily cause private damage, and when it did, the pecuniary loss varied with the character of the property, the circumstances of the shipment and the state of the market, so that instead of giving the shipper the right to recover a penalty fixed in amount or measure, the statute made the guilty carrier liable for the full amount of damages sustained,—whatever they might be and whether greater or less than the rate of rebate paid."

*Southern Pacific Co.* v. *Darnell-Taenzer Co.,* 245 U. S. 531, presents no conflict with *Pennsylvania R. R.* v. *International Coal Co.* There the shipper paid a published rate which the Commission afterwards found to be unrea-

sonable.   This Court held he could recover, as the proximate damage of the unlawful demand, the excess above the rate which the Commission had declared to be reasonable.   The opinion went no further.   Certainly it did not suggest that the unreasonable rate was non-existent for any purpose because forbidden by law.

. Section 6 of the Commerce Act directs—

"(1)   That every common carrier subject to the provisions of this act shall file with the Commission created by this act and print and keep open to public inspection schedules showing all the rates, fares, and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier by railroad, by pipe line, or by water when a through route and joint rate have been established. . . . (3)   No change shall be made in the rates, fares, and charges or joint rates, fares and charges which have been filed and published by any common carrier in compliance with the requirements of this section, except after thirty days' notice to the Commission. . . . *Provided,* That the Commission may, in its discretion and for good cause shown, allow changes upon less than the notice herein specified. . . . (7) No carrier, unless otherwise provided by this Act, shall engage or participate in the transportation of passengers or property, as defined in this Act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this Act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion

of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

" Sec. 8. That in case any common carrier subject to the provisions of this Act shall do, cause to be done, or permit to be done any act, matter, or thing in this Act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this Act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this Act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

" Sec. 10 (1). That any common carrier subject to the provisions of this Act, or, whenever such common carrier is a corporation, any director or officer thereof, or any receivèr, trustee, lessee, agent, or person acting for or employed by such corporation, who, alone or with any other corporation, company, person, or party, shall willfully do or cause to be done, or shall willingly suffer or permit to be done, any act, matter, or thing in this Act prohibited or declared to be unlawful, or who shall aid or abet therein, or shall willfully omit or fail to do any act, matter, or thing in this Act required to be done, or shall cause or willingly suffer or permit any act, matter, or thing so directed or required by this Act to be done or not to be so done, or shall aid or abet any such omission or failure, or shall be guilty of any infraction of this Act for which no penalty is otherwise provided, or who shall aid or abet therein, shall be deemed .guilty of a misdemeanor, and shall, upon conviction thereof in any district court of the United States within the jurisdiction of which such offense was committed, be subject to a fine of not to

exceed five thousand dollars for each offense: *Provided,*
That if the offense for which any person shall be convicted
as aforesaid shall be an unlawful discrimination in rates,
fares, or charges for the transportation of passengers or
property, such person shall, in addition to the fine here-
inbefore provided for, be liable to imprisonment in the
penitentiary for a term of not exceeding two years, or
both such fine and imprisonment, in the discretion of
the court."

What liability did the carrier incur by publishing a
rate from Pecos lower than the scheduled one from Ros-
well without the Commission's permission, and thereafter
imposing and collecting the higher rate upon the ship-
ment to Walla Walla?

Construing the words of § 4 literally, it is argued that
unless some property moved over the longer distance at
the lower rate before greater compensation was charged
for transporting like property over a shorter one, there
was no violation of law. We cannot accept this view. It
does not accord proper weight to imperative require-
ments concerning publication of rates and subsequent
observance of them. The Commission holds, for ex-
ample, that although the schedule contains a plain cleri-
cal error, nevertheless no other charge may be demanded
and the shipper may recover any excess. *Lamb-Fish
Lumber Co.* v. *Y. & M. V. R. R. Co.,* 42 I. C. C. 470.

The record shows, we think, that the carrier violated
the statute by publishing the lower rate for the longer
haul without permission and, *prima facie* at least, incurred
the penalties of § 10. Also, it became " liable to the
person or persons injured thereby for the full amount of
damages sustained in consequence of . . . such
violation," together with reasonable counsel fees, as pro-
vided by § 8. But mere publication of the forbidden
lower rate did not wholly efface the higher intermediate
one from the schedule and substitute for all purposes the

lower one, as a supplement might have done, without regard to the reasonableness or unreasonableness of either.

With special knowledge of rate schedules and relying on *Pennsylvania R. R. Co.* v. *International Coal Co.*, the Interstate Commerce Commission for ten years has required proof of financial loss as a prerequisite to reparation for infractions of the Fourth Section. The rule is firmly established. Congress has not shown disapproval. The Transportation Act, 1920, with evident purpose to conserve the carriers' revenues, added the following to the proviso which gives power to exempt from the long and short haul clause: " But in exercising the authority conferred upon it in this proviso the Commission shall not permit the establishment of any charge to or from the more distant point that is not reasonably compensatory for the service performed." The rule adopted by the Commission follows the logic of the opinion relied upon and can be readily applied. The contrary view would not harmonize with other provisions of the act; and, put into practice, would produce unfortunate consequences.

The statute requires rigid observance of the tariff, without regard to the inherent lawfulness of the rates specified. It commanded adherence to the published rate from Roswell; § 6 forbade any other charge. Observance of the lower rate from Pecos, put in without authorization, might have been forbidden, as pointed out in *United States* v. *Louisville & Nashville R. R. Co., supra;* but it would be going too far to hold, as respondent insists, that the unauthorized publication established the lower rate as the maximum permissible charge from the intermediate point—the only rate therefrom which could be demanded.

If a lower rate published without authority becomes the maximum which may be charged from any inter-

mediate point, mistakes in schedules (and they are inevitable) may become disastrous. Suppose the rate from an obscure point in Maine to San Francisco via Boston, New York and Chicago should be printed at $15.00, instead of $150, and the error remain undiscovered for many months, could all who had paid more than $15.00 for passage along that route recover the excess without proof of pecuniary loss?

After the challenged judgments were entered, *Kansas City Southern Ry. Co.* v. *Wolf*, 261 U. S. 133, was decided. We adhere to the ruling there announced, and in view of it defenses in these causes based upon prescribed limitations must be determined.

The judgments below are reversed. The causes will be remanded with appropriate instructions for further proceedings.

*Reversed.*

Mr. Justice Brandeis dissents.