## NORTHWESTERN OIL CO. v. SOCONY-VACUUM OIL CO., Inc., et al.

### No. 8353.

Circuit Court of Appeals, Seventh Circuit.

Dec. 7, 1943.

,. Raymond A. Crawford, Wm. P. Crawford, and Crawford & Crawford, all of Superior, Wis., Paul E. Hadlick, of Washington, D. C., and Ralph E. Burdick, of Duluth, Minn., for appellant.

David T. Searls, of Chicago, Ill., Herbert H. Thomas, of Madison, Wis., W. H. Dougherty, of Janesville, Wis., Vinson, Elkins, Weems & Francis, of Houston, Tex., Leon E. Isaksen and Thomas, Orr & Isaksen, all of Madison, Wis., Stanley M. Ryan and Nolan, Dougherty, Grubb & Ryan, all of Janesville, Wis., J. H. Marshutz and Fish, Marshutz & Hoffman, all of Milwaukee, Wis., John C. Zwick, of

Chicago, Ill., and Sturtevant Hinman, of Chicago, Ill., for appellees, Socony-Vacuum Oil Co., Inc., Continental Oil Co., Pure Oil Co., Shell Oil Co., Inc., Sinclair Refining Co., Mid-Continent Petroleum Corporation, and Phillips Petroleum Co.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff sued to recover damages alleged to have been incurred by reason of defendants' violation of the Sherman Anti-Trust Law, 15 U.S.C.A. § 1, claiming injury to its business and property under Section 4 of the Clayton Act, 15 U.S.C.A. § 15. At the conclusion of plaintiff's evidence, defendants moved for a directed verdict upon two grounds,—(1), that plaintiff had failed to prove damage, and, (2), that plaintiff had participated in the alleged illegal conspiracy and its execution and was, therefore, in pari delicto with defendants. The court allowed the motion upon the first ground and found it unnecessary to pass upon the second.

Plaintiff is a jobber, reselling gasoline to other jobbers and to retailers and consumers. It purchased from the W. H. Barber Company, who in turn bought from the Tidewater Oil Company. Barber bought at ¼ cent per gallon below the published tank car market and resold to plaintiff at the low of the same market. Plaintiff was assured a margin of 5½ cents per gallon between the tank car price, plus freight, and the normal service station price established from time to time by the Standard Oil Company of Indiana. In January, 1936, this margin was raised to 5⅞ cents.

Plaintiff resold gasoline in cars to other jobbers at the average of the high and low quotations of the tank car spot market published daily. It resold to dealers at tank wagon rates, which, until August, 1936, were determined by deducting a fixed quantity discount, (Q.D.A.) from established retail station prices. Subsequent to adoption of the so-called Iowa plan, August 29, 1936, a dealer's tank wagon price was posted and plaintiff sold at this figure. It resold to consumers at service station quotations or at the consumers' tank wagon price. The rate at which it sold to consumers and dealers was fixed at all times by the posted prices of the market leader, Standard Oil Company of Indiana, which sells more gasoline than any other company in the middle west, having widespread marketing facilities and reaching almost every community. United States v. Socony-Vacuum Oil Co. et al., 7 Cir., 105 F.2d 809. The Standard service station and tank prices follow regularly the increases and decreases in the tank car market and its formula,—tank car cost, plus freight, plus 5½ cents per gallon,—was adopted by the Department of Agriculture and Markets of the state of Wisconsin in order 23C, which fixed a minimum service station price in Wisconsin. Under this order, which was in effect between February and June, 1935, the published tank car market was the basis for determining the minimum service station price in Wisconsin, and it provided that such price would advance or decline 3/10ths of a cent as the average tank car quotation advanced or declined.

The increases in tank car prices complained of came in March, 1935, and by June 14 of that year had reached 1¼ cents per gallon; during this period, plaintiff's price to dealers and consumers had correspondingly increased 1-3/10ths cents. This situation abided until January, 1936, when plaintiff's cost increased ½ cent and its selling price a like amount. During 1936, plaintiff's buying price was reduced .625 of a cent and its selling price .6 of a cent. In November, 1936, its cost increased ¼ of a cent and in December its selling price increased 3/10ths of a cent.

Plaintiff introduced evidence of the total cost of all gasoline purchased under the alleged illegally increased prices and rested without proof of realization upon sales. It apparently believed that proof of increased cost, due to an illegal fixing of prices on the part of defendants, was sufficient to justify recovery of damages under the Clayton Act without showing whether it had in fact escaped damage by fixing equivalently larger selling prices, thus passing on the increased cost to its purchasers.

Its proof further disclosed that, in the meetings and conferences as a result of which stabilization of prices came about, resulting in increased cost of gasoline, plaintiff's officers participated and cooperated; that they were well advised that the program was intended to establish an increased tank car quotation in order to maintain retail prices in its territory and that plaintiff's officers requested its employees to cooperate with the participants in pro-

moting the plan. The letters written by its officers and the testimony clearly establish that plaintiff was an active agency in working out with defendants and others the scheme of which it now complains and in raising and maintaining prices from which it now claims damage has accrued to it.

Defendants were among those indicted and convicted, in the District Court of the Western District of Wisconsin, of violation of Section 1 of the Sherman Act, 15 U.S. C.A. § 1, affirmed in United States v. Socony-Vacuum Oil Co., Inc., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129. The essence of the charge was illegal fixing of increased retail prices of gasoline by defendants by raising tank car prices and thereby, in turn, eventually, retail prices. Upon that conviction plaintiff relied as a basis for recovery in this cause.

The Act, 15 U.S.C.A. § 15, provides that one injured in his business or property by reason of anything forbidden in the anti-trust laws may sue and recover threefold the damages sustained. The statutes were intended to advance the public welfare by promoting free competition and preventing undue restriction of trade and commerce. But by the provision which gives to one damages for his personal benefit, no action is created because of the conspiracy alone; the right of recovery by a private party is limited to the damages actually incurred by him. He must plead and prove a pecuniary loss of or injury to his business or property. Sidney Morris & Co. v. National Ass'n of Stationers, Office Outfitters & Manufacturers, 7 Cir., 40 F.2d 620; Keogh v. Chicago & North Western Railway Company, 7 Cir., 271 F. 444; Maltz v. Sax, 7 Cir., 134 F.2d 2; Pennsylvania Railroad Company v. International Coal Mining Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.1915A, 315; Davis v. Portland Seed Co., 264 U.S. 403, 44 S.Ct. 380, 68 L.Ed. 762.

The cases cited in support of plaintiff's view that it might recover upon showing merely wrongful increase of prices to purchasing jobbers, irrespective of whether the latter correspondingly raised their retail prices or passed on the additional cost to the consumer, are largely those having to do with recovery of improper freight charges under the Commerce Act. But, in Pennsylvania Railroad Company v. International Coal Mining Company, 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.

1915A, 315, the Supreme Court pointed out the obvious distinction between an action to recover freight overcharges and one to recover damages because of unfair discrimination. The carrier is bound to establish published rates and, if these prove to be improper, the shipper is, by statute, in jure proprio, granted the right to recover. 49 U.S.C.A. § 1. This remedy, as a matter of law, is lodged only in those in privity with the carrier, whereas the action under the Clayton Act is one in tort, not to recover an overcharge as such, but to collect damages sustained to plaintiff's property or business. Such damage arises, as Mr. Justice Holmes remarked in Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241, when it is shown that the property of one complaining is diminished.

That the action here is more nearly within those brought under the Commerce Act to recover damages because of illegal discrimination is evident from the language of Pennsylvania Railroad Company v. International Coal Mining Company, supra, and Davis v. Portland Seed Company, 264 U.S. 403, 44 S.Ct. 380, 68 L.Ed. 762. In the Pennsylvania case the Supreme Court asserted that actions of the latter category are suits for damages actually sustained, which may be the same as, or less, or many times greater than the rebates allowed another saying [280 U.S. 184, 33 S.Ct. 898, 57 L.Ed. 1446, Ann.Cas. 1915A, 315]: "Under the statute, it [defendant] was not liable to the plaintiff for the amount of the rebate paid on contract coal, but only for the damages such illegal payment caused the plaintiff. The measure of damages was the pecuniary loss inflicted on the plaintiff." This court applied this reasoning in interpreting the Anti-Trust Act in Keogh v. Chicago & North Western Railway Company, 7 Cir., 271 F. 444, 447, saying: "Under this statute those who may sue for threefold damages * * * are limited to those 'who shall be injured in his business or property,' and if a recovery is permitted it must be limited to the damages 'by him sustained.' Pennsylvania Ry. Co. v. International Coal Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.1915A, 315. The mere fact that the defendants might have been subject to a criminal prosecution by the government, * * * is of no avail to a litigant unless it is established that he sustained pecuniary damage. Pennsylvania Ry. Co. v. Inter-

national Coal Co., supra." This was affirmed by the Supreme Court in 260 U.S. 156, 165, 43 S.Ct. 47, 50, 67 L.Ed. 183, where the court said: "* * * recovery cannot be had unless it is shown, that, as a result of defendants' acts, damages in some amount susceptible of expression in figures resulted. These damages must be proved by facts from which their existence is logically and legally inferable. They cannot be supplied by conjecture. To make proof of such facts would be impossible in the case before us. It is not like those cases where a shipper recovers from the carrier the amount by which its exaction exceeded the legal rate."

In other words the Clayton Act does not permit recovery by plaintiff in causes such as this for unlawful prices as such but authorizes recovery only of pecuniary loss to property or business. The one complaining need not sue the person to whom he has paid the illegal prices. He may recover from any member of the conspiracy, if he shows that the direct effect is to injure him in his business or property and produces facts from which such injury may be ascertained. Inasmuch as plaintiff has wholly failed to prove any loss to its property or business but rather has shown, by all reasonable inferences, that the increased cost of which it complained was passed on to the ultimate consumer, the court rightfully directed a verdict for defendant. Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84; Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 119 F.2d 747, cert. den. 314 U.S. 644, 62 S.Ct. 84, 86 L.Ed. 516; Leonard v. Socony-Vacuum Co., Inc., et al., D.C., 42 F.Supp. 369; Farmers Co-op. Oil Co. v. Socony-Vacuum Oil Co., 8 Cir., 133 F.2d 101; Miller Oil Co. v. Socony-Vacuum Oil Co., D.C., 37 F.Supp. 831.

It was not necessary for the District Court to pass upon the further question raised, nor is it essential here, but we think it not amiss to say that the court would have been justified in directing a verdict upon the second ground, namely, that plaintiff participated in the illegal conspiracy. This combination was stamped with disapproval by the Supreme Court in United States v. Socony-Vacuum Oil Co., supra, 310 U.S. at page 221, 60 S.Ct. at page 843,

84 L.Ed. 1129, in these words: "Any combination which tampers with price structures is engaged in an unlawful activity. Even though the members of the price-fixing group were in no position to control the market, to the extent that they raised, lowered, or stabilized prices they would be directly interfering with the free play of market forces. The Act places all such schemes beyond the pale and protects that vital part of our economy against any degree of interference. Congress has not left with us the determination of whether or not particular price-fixing schemes are wise or unwise, healthy or destructive. * * * Under the Sherman Act a combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal per se."

Having participated in this illegal undertaking, plaintiff may not recover; where parties stand in pari delicto, the law leaves them where it finds them. Maltz v. Sax et al., 7 Cir., 134 F.2d 2, 5; Eastman Kodak Co. v. Blackmore, 2 Cir., 277 F. 694, 700, 701; Victor Talking Mach. Co. v. Kemeny, 3 Cir., 271 F. 810, 816; Blufields S. S. Co. Limited v. United Fruit Co., 3 Cir., 243 F. 1, 13; Tilden et al. v. Quaker Oats Co., et al., 7 Cir., 1 F.2d 160; Bishop v. American Preservers Co., et al. C.C. N.D., Ill.,N.D., 105 F. 845; Higgins v. McCrea, 116 U.S. 671, 6 S.Ct. 557, 29 L.Ed. 764; Harriman v. Northern Securities Co., 197 U.S. 244, 296, 25. S.Ct. 493, 49 L.Ed. 739. As said in Victor Talking Mach. Co. v. Kemeny, 3 Cir., 271 F. 810, 816: "* * * assuming the business system or combination established by the defendant for the sale of its products was in violation of the Sherman Anti-Trust Law, the plaintiff, having been a part of the system or combination and thereby having participated in the violation of the law, cannot be heard to complain of injury to his business resulting therefrom * * *."

We find no error in the exclusion of evidence. That offered and refused tended to impeach the integrity of the conviction upon which plaintiff relied or was clearly irrelevant or immaterial.

The judgment is affirmed.