
**LOUISVILLE & N. R. CO. v. ST. REGIS PAPER CO.**

Civ. No. 390.

United States District Court
N. D. Florida, Pensacola Division.

Feb. 11, 1952.

Jones & Harrell, Pensacola, Fla., for St. Regis Paper Co.

Yonge, Beggs & Lane, Pensacola, Fla., for Louisville & Nashville R. Co.

DE VANE, Chief Judge.

This is a suit to recover charges for switching services rendered at mobile, Alabama by Terminal Railway Alabama State Docks in connection with 140 carloads of freight. One hundred, thirty-nine of these were cars of chemical lime shipped from Mobile, Alabama to the defendant at Cantonment, Florida and one was a car of paper bags shipped by defendant from Cantonment, Florida to Mobile, Alabama. These cars moved between points of origin and destination over plaintiff's lines.

The parties have stipulated that the line-haul rate between the point of origin and the point of destination was properly charged and that the only issue in the case is whether plaintiff was required to absorb the switching charges or defendant was liable for them.

Under the provisions of Section 6(7) of the Interstate Commerce Act, 49 U.S.C.A. § 6(7), plaintiff could lawfully absorb these switching only if permitted to do so by its tariffs. The tariff provision which governs the absorption of these switching charges is contained in Rule 70 (Plaintiff's Exh. #9) and reads as follows: "Except as otherwise specifically provided, terminal and intermediate switching charges of connecting and/or switching and terminal lines and trackage charges of such lines will be in addition to the line-haul rate of the L. & N. R. R."

Among the exceptions otherwise specifically provided in the tariff is the following: "The L. & N. R. R. will absorb the lawfully published switching charges assessed by the A. T. & N. R. R., G. M. & O. R. R., SOU. RWY., and T. R. A. S. D. (See N. O. 1) on: (a) Carload Competitive Traffic." (T. R. A. S. D. v. Terminal Railway Alabama State Docks.)

Rule 95 of the Tariff defines "Competitive Traffic" as follows: "By the term 'Competitive Traffic' or 'Competitive Shipments' is meant: Traffic, or shipments,

from or to points on the L. & N. where the charges applicable via other rail lines as originating or delivering lines (as the case may be), are the same as or lower than the charges applicable for account of the L. & N."

The shipments of lime from Mobile, Alabama to Cantonment, Florida moved wholly over the lines of plaintiff, from Mobile through Atmore, Alabama, to Flomaton, Alabama, thence to Cantonment, Florida. The shipment of the carload of bags moved from Cantonment, Florida, to Mobile, Alabama over the same route. For part of the way there was an alternate route available to defendant. On shipments from Mobile, Alabama to Cantonment, Florida this alternate route was over plaintiff's line from Mobile to Atmore, Alabama, thence over the St. Louis-San Francisco Railway from Atmore, Alabama to Cantonment, Florida. Likewise, the shipment of bags from Cantonment, Florida to Mobile, Alabama could have originated on the St. Louis-San Francisco Railway, at Cantonment, Florida and moved over the lines of that railway at Atmore, Alabama and there delivered to the L & N for shipment to final destination.

The question presented is whether this competitive route for part of the distance between Mobile, Alabama and Cantonment, Florida requires plaintiff to absorb the switching charges in question.

Defendant contends that the wording of the tariff is ambiguous and subject to two interpretations. This contention of the defendant is based upon the language of the rule, itself, and further upon the conflicting informal interpretations of the Interstate Commerce Commission, (Defendant's Exh. #1) and (Plaintiff's Exh. #16) and upon the testimony of expert witnesses.

In response to a letter from the Assistant General Freight Agent of the St. Louis-San Francisco Ry. Co. the Secretary of the Interstate Commerce Commission, in 1936, ruled plaintiff should absorb the switching charges on shipments of the character involved here. In reply to a protest from the General Freight Agent

of the L & N, in 1938, the Secretary of the Interstate Commerce Commission reversed the ruling and held that the tariff did not authorize the absorption of the switching charges. The rate expert for plaintiff testified at the hearing that the tariff prohibited absorption of the switching charges on these shipments and that while the tariff was in effect the railroad had collected such charges, except where they were erroneously left off the freight bill by the local freight agent as in these cases. The rate expert for the St. Louis-San Francisco Ry. Co. testified that under the Rule, in his opinion, plaintiff was required to absorb the switching charges in its line-haul rate.

■ It is the law that where there is any ambiguity in the language in a tariff the tariff must be construed against the railroad and in favor of the shipper. Atlantic Coast Line Ry. Co. v. Atlantic Bridge Co., 5 Cir., 57 F.2d 654; Union Wire-Rope Corp. v. Atchison T. & S. Ry. Co., 8 Cir., 66 F.2d 965.

■ The rulings of the Interstate Commerce Commission are not binding upon or helpful to the court. Neither is the testimony of the two rate experts. The court finds no ambiguity in the tariff. It clearly provided that the originating carrier would absorb switching charges only in those cases where there was the specified competition at both point of origin and point of destination. The parties have stipulated in this case that traffic between Mobile, Alabama and Cantonment, Florida could not move, at the same or lower line-haul rates, exclusively over an alternate route, but that only the L & N could handle the traffic between Atmore and Mobile, Alabama. The required competition, therefore, did not exist.

■ The tariff provision prohibiting the absorption of switching charges on these and similar movements proved to be unsatisfactory and the L & N changed its tariff shortly after this case arose so as to authorize it to absorb the switching charges, but that action of the railroad vests no authority in this court to make that change

retroactive and apply it to the movements in question.

Defendant further contends that the tariff in question is illegal for the reason it is in violation of Section 4 of the Interstate Commerce Act, 49 U.S.C.A. § 4. The evidence in the case shows that in movements of freight in carload lots between Mobile, Alabama and Pensacola, Florida the tariffs of plaintiff authorized the absorption of these switching charges and as Pensacola, Florida is a greater distance from Mobile, Alabama than Cantonment, Florida, to charge a greater rate for the shorter distance is in violation of Section 4.

The first answer to this contention is that it is not a good defense in this case. Assuming that the published tariffs involved here may have been in violation of Section 4 of the Interstate Commerce Act the carrier, nevertheless, is required, under the law, to collect the rates prescribed in the published tariffs. Other remedies are provided for violations of Section 4 of the Act. Davis v. Portland Seed Co., 264 U.S. 403, 44 S.Ct. 380, 68 L.Ed. 762; Beaumont S. L. & W. Ry. Co. v. Magnolia Provision Co., 5 Cir., 26 F.2d 72.

While the contention here made by defendant that the tariffs in question violate the long and short haul clause, Sec. 4 of the Interstate Commerce Act, is found by the court to be no defense in this suit, the court, nevertheless, deems it appropriate to point out that plaintiff has secured relief from the Interstate Commerce Commission of the provisions of Section 4 of the Interstate Commerce Act so far as it applies to the rates in question. Section 4 of the Act reads in part as follows: "(1) * * * and the Commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section * *."

Pursuant to this provision of Section 4 the Commission, on March 20, 1911 entered an order which gave all railroads authority to absorb switching charges even though such absorption would result in higher charges to intermediate points than to more distant points (Plaintiff's Exh. #19).

This order was still in force and effect at the time the shipments involved in this case were made.

The court finds and holds that plaintiff is entitled to recover the switching charges involved in this case.

The Clerk will enter judgment for plaintiff in accordance with this Memorandum Decision, taxing costs against defendant.