Keith **SCHNEIDER**, Plaintiff,

v.

**HARRISON ELECTRICAL WORKERS TRUST FUND, et al., Defendants.**

No. CIV.A.03–11652 NMG.

United States District Court, D. Massachusetts.

Aug. 12, 2005.

George P. Fisher, Attorney at Law, Portland, OR, Susan E. Stenger, Perkins, Smith & Cohen, LLP, Boston, MA, for Plaintiff.

Stephen H. Buckley, Brownstein, Rask, Sweeney, et al., Portland, OR, Philip M. Cronin, Peabody & Arnold LLP, Boston, David W. Healey, David W. Healey & Associates, Mary T. Sullivan, Segal, Roitman & Coleman, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

Keith Schneider ("Schneider"), individually and purportedly on behalf of similarly situated individuals, brings claims against Local 103, I.B.E.W. Health Benefit Plan ("Local 103 Plan") and its trustees relating to the retention of health and welfare benefit plan contributions.[1]  Although this case was filed as a class action, the class has not yet been certified. Defendants do not object to the Court's consideration of the pending summary judgment motions prior to addressing the issue of class certification. Accordingly, the Court will proceed to address those motions.

### I. *Background*

Schneider, an electrician, is a member of the International Brotherhood of Electrical Workers Local 932 ("Local 932"), his "home local", which is based in Oregon. He is a participant in and beneficiary of that local's health and welfare benefit plan, the Harrison Electrical Workers Trust Fund ("the Harrison Fund"). When Schneider is working under the jurisdiction of his home local, the Harrison Fund collects contributions from Schneider's employers based upon hourly rates and administers Schneider's medical services and pension.

In May, 2002, Schneider traveled to Boston to look for work through I.B.E.W. Local 103 ("Local 103"). Upon his arrival, Schneider was given the option of partici-
pating in a reciprocal program covering his health and welfare benefits. Pursuant to that program, which is memorialized by the Electrical Industry Health and Welfare Reciprocal Agreement ("the Reciprocal Agreement"), an employee working outside of the jurisdiction of his home local may elect to have the fund in the area in which he is working ("the participating fund") collect contributions and transfer money to his home local on his behalf. If the employee does not elect to become involved in the reciprocal program, he partakes in the benefit plan of the participating fund, subject to any eligibility requirements of that plan.

The Reciprocal Agreement provides that the amount transferred to a participating employee's home local will be the number of hours the employee has worked multiplied by the lesser of 1) the contribution rate of the employee's home local or 2) the contribution rate of the participating fund. During the time Schneider worked within the jurisdiction of Local 103, the hourly contribution rate of his home fund fluctuated between $4.40 and $4.90 and the hourly contribution rate of Local 103 fluctuated between $5.50 and $5.75.

Schneider elected to join the reciprocal program and manifested that election by signing an Employees Reciprocal Authorization and Release ("the Release"). That document acknowledges that the amount transferred will not exceed the amount provided in the prevailing Collective Bargaining Agreement of the signer's home fund. Pursuant to that document and the Reciprocal Agreement, either $4.40 or $4.90 per hour was transferred to the Harrison Fund on Schneider's behalf and the remainder was retained by Local 103.

---

1. As explained below, Harrison Electrical Workers Trust Fund was originally named as a defendant but will be dismissed pursuant to a stipulation of the parties.

Schneider worked within the jurisdiction of Local 103 from May, 2002 until February, 2003. During that time, the Local 103 Plan received contributions from Schneider's employers in the amount of $6,990.51. Pursuant to the Reciprocal Agreement and the Release, it transferred $5,568.35 to the Harrison Trust and retained $1,422.16. Retention by the Local 103 Plan of the latter amount forms the basis for this lawsuit.

Schneider alleges that the conduct of the Local 103 Plan in retaining the $1,422.16 in contributions collected on his behalf violated the Labor Management Relations Act ("LMRA"), Section 103, as amended, 29 U.S.C. § 186. He requests that the Court direct the Local 103 Plan to deliver to Harrison Trust the entire amount of contributions that were collected on his behalf. He also seeks to have the Court enjoin defendants from any future violations of 29 U.S.C. § 186.

Schneider originally brought claims under the LMRA and the Employment Retirement Income Security Act ("ERISA") and for unjust enrichment. In his response to defendants' motion for summary judgment, however, Schneider takes the position "that the ERISA has no application whatsoever to Schneider's claims against Defendants" and that his ERISA and unjust enrichment claims are "irrelevant." Moreover, Schneider does not refute defendants' arguments that they are entitled to summary judgment on those claims. The Court thus concludes that Schneider has abandoned his ERISA and unjust enrichment claims.

## II. *Motion for Summary Judgment*

### A. **Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen.* *Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991) (quoting *Garside v. Osco Drug. Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. **Analysis**

The problem Congress sought to remedy by the enactment of Section 302 of the LMRA, which was codified at 29 U.S.C. § 186, was the corruption of the collective bargaining process through bribery and extortion. *Arroyo v. United States,* 359

U.S. 419, 425–26, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959). The statute aims to prevent such bribery and extortion while permitting payments to be made for pension plans and other legitimate employee benefits.

Subsection (a) of Section 302 provides, in relevant part, that it is unlawful for any employer "to pay, lend, deliver, or agree to pay, lend, or deliver" any money or other thing of value to any union representative or labor organization. Subsection (b) is its counterpart and conversely provides that it is unlawful for any person "to request, demand, receive, or accept, or agree to receive or accept" any money or other thing of value prohibited by subsection (a). Standing alone, those sections would criminalize the common practices of 1) employers contributing to benefit plans that are created for the benefit of their employees and 2) the acceptance of such contributions by plans.

Subsection (c), however, affords several exceptions to the provisions of subsections (a) and (b). The exception relevant to this case is subsection (c)(5), which provides that subsections (a) and (b) are not applicable "with respect to money . . . paid to a trust fund established by [an employee representative] for the sole and exclusive benefit of the employees of such employer." The statute contains additional provisions relative to (c)(5) but none of them is relevant here.

In this case, Schneider alleges that defendants "violated 29 U.S.C. § 186(a) and/or (b) when they retained the excess portion of contributions earned by Schneider, thereby becoming a nonqualifying trust under 29 U.S.C. § 186(c)(5)."

In *Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581, 113 S.Ct. 2252, 124 L.Ed.2d 522 (1993), the Supreme Court examined the reach of Section 302 of the LMRA, as amended, codified at 29 U.S.C. § 186. It held that

> A "violation" of § 302 occurs when the substantive restrictions in §§ 302(a) and (b) are disobeyed, which happens, not when funds are administered by the trust fund, but when they are "pa[id], len[t], or deliver[ed]" to the trust fund, § 302(a), or when they are "receive[d], or accept[ed]" by the trust fund, or "request[ed], [or] demand[ed]" for the trust fund, § 302(b)(1).

*Id.* at 588, 113 S.Ct. 2252 (alterations in original).

In light of that opinion, it is clear that plaintiff does not have a viable cause of action against defendants under Section 302. He does not allege that defendants paid, lent, delivered, received, accepted, requested or demanded funds in violation of Section 302 and the Supreme Court has held that one of those actions is required in order to constitute a violation of Section 302. The retention of funds by a welfare plan does not constitute a violation of Section 302. Because plaintiff has not alleged that defendants engaged in any actions that could be considered a violation of Section 302, summary judgment for defendants is appropriate on the LMRA claim.

The Supreme Court in *Demisay* also decided that

> the exception . . . set forth in paragraph (c)(5) relates, not to the purpose for which the trust fund is in fact used . . . but rather to the purpose for which the trust fund is "established," § 302(c)(5), and for which the payments are "held in trust," § 302(c)(5)(A). The trustees' failure to comply with these latter purposes may be a breach of their contractual or fiduciary obligations and may subject them to suit for such breach; but it is no violation of § 302.

*Id.* Plaintiff's allegation that defendants' retention of certain assets transformed the trust into a "nonqualifying trust under 29

U.S.C. § 186(c)(5)" similarly fails to state a claim for relief under Section 302. Such retention may be the basis for other claims, as indicated by the *Demisay* Court, but they are not violations of Section 302 of the LMRA.

Plaintiff's attempts to distinguish *Demisay* from the instant case are convoluted and unpersuasive. This case falls squarely within the holding of *Demisay* and, therefore, plaintiff's LMRA claim cannot succeed.

### III. *Claim Against Harrison Electrical Workers Trust Fund*

Plaintiff originally brought a claim against Harrison Electrical Workers Trust Fund and its trustees, Grant Zadow and Timothy Gauthier. Pursuant to the Stipulation of Dismissal filed by the parties (Docket No. 64), that claim against those defendants is dismissed with prejudice and without costs. The motion of Harrison Electrical Workers Trust Fund, Grant Zadow and Timothy Gauthier for summary judgment (Docket No. 54) will, therefore, be denied as moot.

### ORDER

In accordance with the foregoing:

1) the Motion of Defendants Local 103, I.B.E.W. Health Benefit Plan, David R. Mackay, William Seaver, John A. Penney, John Dumas, Michael Monahan and Chuck Monahan for Summary Judgment (Docket No. 61) is ALLOWED; and

2) the Motion of Defendants Harrison Electrical Workers Trust Fund, Timothy Gauthier and Grant Zadow for Summary Judgment (Docket No. 54) is DENIED as moot.

**So ordered.**